## Utility Appliance Corporation, Appellant, v. Kuhns.

Argued March 20, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Joseph S. D. Christof,* with him *Irving M. Green,* and *McCloskey, Best & Leslie,* for appellant.

*John M. Noel,* for appellee.

OPINION BY MR. JUSTICE COHEN, June 30, 1958:

Plaintiff, a manufacturer of air cooling units, brought an action in assumpsit against the defendant distributor to recover $3,929.88 with interest for goods sold and delivered. Distributor admitted the debt, but alleging the breach of an oral contract for the exclusive sale and distribution of Manufacturer's products, counterclaimed for $22,682.78 which sum represented commissions allegedly due her on sales made in her territory in 1954 directly by Manufacturer.

The issue of the existence of the alleged contract was submitted to a jury which returned a verdict in favor of Distributor on her counterclaim in the amount of $11,300. After Manufacturer's motions for judgment n.o.v. and, in the alternative, for a new trial were dismissed by the court *en banc,* this appeal was taken.

Viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the Distributor, we hold that the oral agreement was not an enforceable contract.

Although Distributor's business dealings with Manufacturer began in 1947, the manager of Distributor's business testified that the parol arrangements creating the exclusive distributorship were made with Manufacturer's sales director at a meeting in Pittsburgh sometime between 1950 and 1952. By the terms of the

agreement Distributor was granted an exclusive franchise to sell Manufacturer's appliances to dealers within a radius of "approximately" 150 or 200 miles of the Borough of Vandergrift. No effective date for this agreement was specified, neither was the duration of the franchise fixed.[1] In the event that Manufacturer sold air coolers directly to dealers within the territory, Distributor was to be paid a commission on each unit sold equal to "more or less" the difference between the distributor and dealer costs.[2] It is upon this provision that Distributor bases her counterclaim for commissions on the sales made directly by Manufacturer in 1954.

Although the terms of the oral agreement are vague and indefinite, Manufacturer's obligations thereunder were to sell its products exclusively through Distribu-

---

[1] Under these circumstances the agreement would be effective for a reasonable time and thereafter terminable at will by either party providing notice of termination first be given. *Nolle v. Mutual Union Brewing Co.*, 264 Pa. 534, 108 Atl. 23 (1919); Restatement, Contracts §§45-47 (1932); 4 Williston, Contracts §1027A at 2852 (rev. ed. 1936). See also *Abrams v. George E. Keith*, 30 F. 2d 90 (3rd cir. 1929). As to what constitutes a reasonable time, see *Carlson v. Stone-Ordean-Wells Co.*, 40 Mont. 434, 107 Pac. 419 (1910); *Saddlery Hardware Mfg. Co. v. Hillsborough Mills*, 68 N.H. 216, 44 Atl. 300 (1894); *Curtiss Candy Co. v. Silberman*, 45 F. 2d 451 (6th cir. 1930) (seller's promise not to sell to others incident to sales contract held enforceable for the time which purchaser reasonably requires to dispose of goods taken under the contract). Cf. *Cummings v. Kelling Nut Co.*, 368 Pa. 448, 455-456, 84 A. 2d 323 (1951) (contract of *agency* or *employment* without a specific duration is presumed to be terminable at will and burden is upon the party asserting otherwise to come forward with evidence to establish a definite tenure.)

[2] Although Distributor's manager testified that such commissions were to be paid on orders which were turned over to Manufacturer as too large to handle, he also stated in a letter sent to Manufacturer and introduced in evidence: "Remember . . . you also promised me that I would get a percentage of anything you sold in my territory."

tor in the area covered by the franchise, and to pay Distributor a commission on all appliances sold directly to dealers therein. But what was Distributor's undertaking?

Distributor was under no duty to purchase any of Manufacturer's air cooling units. She did not agree to refrain from selling the air conditioning appliances of competitors, or from selling Manufacturer's appliances outside her territory. As a matter of fact, Distributor did not even promise to invest either her time, money or effort to promote the sale of Manufacturer's products; Distributor's witness testified that such matters were left entirely to her discretion. In this regard the record indicates that she continued to engage in the plumbing and heating business at her establishment in addition to marketing Manufacturer's air cooling units. In short, Distributor's obligations under the oral agreement were illusory and capable of performance without detriment to herself or benefit to Manufacturer.[3] This lack of consideration relieves Manufacturer from any obligation under the oral agreement for the exclusive sale and distribution of Manufacturer's products.[4]   *P. P. Williams Co. v. Colorado*

---

[3] Under the circumstances of this case, we are not warranted in implying promises by Distributor to do or refrain from doing any of the acts suggested in the text as supplying consideration for Manufacturer's promises. See *International Shoe Co. v. Herndon*, 135 S.C. 138, 133 S.E. 202 (1926).

[4] "We do not overlook . . . [the principle of promissory estoppel as set forth in Restatement, Contracts §90]. But we do not consider this such a case. This growing doctrine of the law is founded upon the injustice and hardship arising from the justifiable reliance of the promisee upon the promise, should such promise be held unenforceable for want of consideration. Here the evidence discloses no such hardship upon or unfairness toward the plaintiffs, nor unremunerated services, nor expenditures by them of such substantial character as would justify the application of the principle re-

*Milling and Elevator Co.,* 246 F. 2d 240, 244-245 (5th cir. 1957); *Motor Car Supply Co. v. General Household Utilities Co.,* 80 F. 2d 167, 170 (4th cir. 1935). *Cf. Moon Motor Car Co. of N. Y. v. Moon Motor Co.,* 29 F. 2d 3, 4 (2nd cir. 1928) (opinion by L. HAND, C. J.).[5]

Accordingly, the court below should have entered judgment on plaintiff's claim and judgment n.o.v. on defendant's counterclaim.

Judgment for defendant reversed. Judgment here entered for plaintiff n.o.v.

---

ferred to." *Curtiss Candy Co. v. Silberman,* 45 F. 2d 451, 453 (6th cir. 1930).

[5] Although the distribution of a manufacturer's products on a national scale is made possible by modern technology, it still requires the establishment of relationships with local distributors. Controversies arising under these relationships are usually litigated in the federal courts because of diversity of citizenship.

For an analysis of the problem of consideration as it pertains to these sales agency or sales distribution relationships, see Note, 31 Colum. L. Rev. 830 (1931).