UNIVERSAL COMPUTER SYSTEMS, INC., Plaintiff,

v.

MEDICAL SERVICES ASSOCIATION OF PENNSYLVANIA, t/a Pennsylvania Blue Shield, Defendants.

Civ. A. No. 77–868.

United States District Court, M. D. Pennsylvania.

Aug. 15, 1979.

Eric J. Wiener, Handler & Handler, Harrisburg, Pa., for plaintiffs.

Francis J. O'Gorman, Jr., Keefer, Wood, Allen and Rahal, Harrisburg, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

This case was consolidated with Universal Computer Systems, Inc. v. Allegheny Airlines, Civil No. 76–1411 (M.D.Pa.) and tried

before a jury on November 8–9, 1978. The jury returned a verdict against the Defendant Medical Services Association of Pennsylvania, trading as Pennsylvania Blue Shield, (hereinafter Defendant Blue Shield) in the amount of $13,000. A similar verdict was returned against Allegheny Airlines in the other civil action. On November 17, 1978 the Defendant Blue Shield filed a motion for judgment notwithstanding the verdict and a motion for a new trial. The matter has been fully briefed and is ripe for disposition. For the reasons that follow the motion for judgment notwithstanding the verdict will be granted. The motion for a new trial will be denied.

■ If alternative motions for judgment notwithstanding the verdict or for a new trial are made, the trial court should rule on both branches of the motion. There are significant substantive prerequisites to the consideration of a motion for judgment notwithstanding the verdict pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. A party must make a motion for a directed verdict and a party may not base a motion for judgment notwithstanding the verdict on a ground not advanced in his motion for a directed verdict, since a motion made after the trial comes too late for possible curative action short of a new trial. *Wall v. United States*, 592 F.2d 154 (3d Cir. 1979). In reviewing the motion for judgment notwithstanding the verdict the Court must view the evidence most favorably to the party against whom the motion is made. *Denneny v. Siegel*, 407 F.2d 433 (3d Cir. 1969). We must determine whether as a matter of law the record is critically deficient of that minimum quantum of evidence from which a jury might afford relief. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir. 1977). There exists a different standard for determining a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. A motion for a new trial may be granted on the ground that the verdict is against the clear weight of the evidence or when necessary to prevent a miscarriage of justice. Wright & Miller, Federal Practice and Procedure: Civil § 2505.

We will briefly recite the facts of this case construed in the light most favorable to the Plaintiff as the jury returned a verdict in favor of the Plaintiff after weighing the factual presentations of both sides.

In July of 1975, Blue Shield solicited bids for the lease of a computer. Pursuant to the bid solicitation, Plaintiff prepared a proposal, which was required by the terms of the solicitation to be received by Blue Shield no later than 12:00 noon on August 18, 1975. Plaintiff, through its President, Warren Wilson, contacted Joel Gebert, an employee of Blue Shield and obtained Gebert's assurance that he would have the bid proposal picked up at the Allegheny Airlines ticket counter in Harrisburg on the morning of August 18, 1975 in time for the Blue Shield 12:00 noon deadline in Camp Hill. Gebert received all calls from prospective bidders and was the sole contact pursuant to the request for bids. The calls were not referred to anyone else. Pursuant to Gebert's promise, Plaintiff dispatched his bid proposal by Allegheny Airlines PDQ Service on August 18, 1975, at approximately 8:30 a. m. Wilson called Gebert again to give him the waybill number so that the proposal could be picked up per the agreement. Wilson was informed by Gebert that Gebert had changed his mind regarding his promise to pick up the bid proposal and would not do so. Wilson attempted through phone calls to Allegheny to have the proposal picked up by courier or other agents and transmitted to Defendant Blue Shield. Defendant Allegheny refused to allow any agent or courier of Plaintiff to pick up the package other than a direct employee of either Plaintiff or the consignee Blue Shield. Through the persistence of Wilson in contacting the supervisors of the airline manager an order was finally directed to the manager to release the package to a courier after 1:00 p. m. The proposal was released too late to make the required 12:00 noon deadline and was rejected by Defendant Blue Shield as untimely and was returned unopened.

Contrary to the position taken by Defendant Blue Shield in its motion for judg-

ment notwithstanding the verdict we believe the jury could have found from the evidence that someone from Defendant Blue Shield made a promise to pick up the bid proposal at the airport and then later refused to do so. However, the legal issues in this case become quite complex.

Basically the Plaintiff's argument is that *if* the Defendant Blue Shield had kept its promise to pick up the bid proposal, the proposal would have arrived in a timely manner for the bid opening. The position of the Plaintiff in the companion case to this one is that even *if* the bid proposal had not been picked up by Defendant Blue Shield, the proposal would still have timely arrived if Defendant Allegheny's airport manager had not refused to release the bid to anyone but Defendant Blue Shield or the consignor himself. The theory of the Plaintiff further is that *if* the bid had timely arrived, it would have been the lowest. Plaintiff further asserts that if all of these things had come to pass it would have been approved for the contract and therefore any damages recovered should equal Plaintiff's *projected* profit on the contract.

AGENCY

The first hurdle for the Plaintiff in presenting its case against Defendant Blue Shield was to establish that a promise was made by an agent of Blue Shield who had the authority to do so. Whether or not the promise was made was clearly for the jury. Plaintiff, as was mentioned earlier in this memorandum, presented testimony through its President, Warren Wilson, that he contacted Joel Gebert, an employee of Blue Shield, and that he obtained Gebert's assurance that he would have the bid proposal picked up at the Allegheny Airlines ticket counter in Harrisburg on the morning of August 18, 1975, in time for the Blue Shield 12:00 noon bid deadline in Camp Hill. Gebert denied that he made such a commitment.

The Court instructed the jury that Defendant Blue Shield could only act through its agents and instructed the jury that it would have to determine if Gebert was an agent of Defendant Blue Shield

authorized to made such a promise, as a principal is not generally liable on account of acts committed or representations made outside the apparent scope of the agent's authority. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 246 A.2d 407 (1968). Generally, and especially where there is a dispute of fact, the question of an agent's authority is for the jury. *Norton v. Railway Express Agency*, 412 F.2d 112 (3d Cir. 1969); *Anzenberger v. Nickols*, 413 Pa. 543, 198 A.2d 309 (1964); P.L.E. Agency § 178.

Testimony developed that Gebert received all calls from prospective bidders and was the sole contact pursuant to the request for bids. The calls were not referred to anyone else, although in the actual solicitation for bids the name of Ray Eichelberger appeared and it was indicated that Eichelberger was the Blue Shield agent designated to receive the bids. Agency requires no special formalities such as a writing, and arises when one authorizes another expressly or impliedly, to act as his agent. *Falconer v. Mazeos*, 403 Pa. 165, 168 A.2d 558 (1961). As between a principal and third persons, rights and liabilities are not limited by the agent's express or implied authority but rather by his apparent authority. PLE Agency § 95. The test has been stated to be whether a man of ordinary prudence, diligence and discretion would believe and have a right to believe that the agent has the authority he pretends to exercise. *Apex Financial Corp. v. Decker*, 245 Pa.Super. 439, 369 A.2d 483 (1976); *Pollock Industries, Inc. v. General Steel Castings Corp.*, 203 Pa.Super. 453, 201 A.2d 606 (1964).

The Defendant Blue Shield asserts that there is an essential flaw in the authority of Gebert to act as an agent in that to do what Gebert is alleged to have said he would do would be an improper preference. The federal procurement regulations which were applicable to this bid submission provided:

"1–2.301 Responsiveness of bids.

(a) To be considered for award, a bid must comply in all material respects with the invitation for bids so that, both as to

method and timeliness of submission and as to the substance of any resulting contract, all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained." 41 C.R.R. § 1–2.301 (1976).

A principal is not bound by the unauthorized act of his agent if the third person dealt with had notice of the agent's lack of authority. *Schenker v. Indemnity Insurance Company of North America*, 340 Pa. 81, 16 A.2d 304 (1940); PLE Agency § 121. A third person dealing with an agent has a duty to use reasonable care to ascertain his authority, especially when dealing with the agent for the first time. P.L.E. Agency § 122. If all parties concerned have full opportunity to know the law which applies to the facts concerning the agent's authority, the principal cannot be bound by an unauthorized exercise of such authority. *Mott v. Kaldes*, 288 Pa. 264, 135 A. 764 (1927).

We conclude now that picking up the bid for the Plaintiff by the Defendant Blue Shield at the airport would have constituted an improper preference which would have placed Plaintiff on an unequal footing in regard to its bid submission. Because Plaintiff should have been aware of the rules regarding preferences on bids governed in part by the federal procurement regulations we find as a matter of law that Blue Shield's agent Gebert did not possess actual, implied or apparent authority to pick up and transport Plaintiff's bid from the airport to the Camp Hill location where the bids were due and therefore the question should not have been presented to the jury.

## BINDING NATURE OF THE PROMISE

There are other problems with Plaintiff's case. Consideration is an essential ingredient of a contract and a promise unsupported by consideration is unenforceable. *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127 (1940). Valid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return prom-

ise bargained for and given in exchange for the original promise. *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228 (1978); *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A.2d 35 (1958); *Hillcrest Foundation v. McFeaters*, 332 Pa. 497, 2 A.2d 775 (1938).

We believe the promise of Defendant Blue Shield, even if made by an agent with authority to do so was unsupported by consideration. Mutuality of obligation is generally an essential element of every enforceable contract. *Girard Trust Bank v. Life Insurance Company of North America*, 243 Pa.Super. 152, 364 A.2d 495 (1976). Any obligation on the part of Plaintiff was purely illusory. The act of submission of the bid conferred no special benefit on Defendant Blue Shield nor was it a detriment to Plaintiff. Although it could be argued that Plaintiff did forebear from submitting its bid by another means in reliance on the promise, we do not believe such forebearance can constitute true consideration as Plaintiff at no time was obligated to submit a bid at all, and could have at any time before opening withdrawn or altered its proposal or indicated that it did not wish to bid and Defendant Blue Shield would have been unable to require such a submission. See, *Utility Appliance Corp. v. Kuhns,* supra. Although the jury was instructed on a contract theory, we believe the evidence was legally insufficient for the jury to be able to base a verdict for the Plaintiff on a contractual basis.

## PROMISSORY ESTOPPEL

Failing to prove a contract based upon consideration, the Plaintiff has also attempted to rely on the theory of promissory estoppel as a substitute for consideration. Restatement Contracts § 90 (1932); Restatement, Contracts 2d (Tent. Draft No. 2, April 30, 1965). To create liability on the basis of promissory estoppel, a promise must be of such a nature and made under such circumstances that the promisor should reasonably anticipate that it will induce action or forebearance of a definite and substantial character on the part of the prom-

**478**

isee. Further it must appear that the promise of the promisor actually does induce such action or forebearance on the part of the promisee and the circumstances are such that injustice can be avoided only by enforcement of the promise. *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938). The new tentative draft of the restatement further provides that the remedy may be limited as justice requires. *Murphy v. Burke*, 454 Pa. 391, 311 A.2d 904 (1973). A review of the cases indicates that while promissory estoppel is included in the law of Pennsylvania, it has seldom been found to apply.[1]

The doctrine was applied in *Fried v. Fisher, supra.* In that case a partner of a lessee firm informed the landlord that a partner desired to withdraw from the firm and enter his own business, but that he did not wish to do so unless he could be released from the partnership obligations. The lessor indicated that he was satisfied to have the other firm members assume the lease entirely. The partnership was dissolved and the partner leaving the firm entered another business. It was held that the lessor could not subsequently enforce the lease as to the withdrawing partner. There existed a promise by the lessor which he should reasonably have expected to induce definite and substantial action by the promisee and which did in fact induce such reliance. The court found that injustice could be avoided only by enforcement of the promise.

■ As we stated earlier there was testimony in the present case that a promise to pick up the bid was made, however the promise was made by one with no authority to do so. Assuming for the moment that such authority was established, the jury would have been justified in finding that there was reliance on the promise, as Plaintiff dispatched its bid proposal by Allegheny's PDQ Service upon being assured that Defendant Blue Shield would pick up the bid proposal at the airport. There is a problem with detriment arising out of the reliance however, as the bid proposal could still have been received by Blue Shield in Camp Hill had the Allegheny airport manager released the bid proposal as he was requested to do by Plaintiff. Therefore, although the Plaintiff relied on the promise in sending the bid proposal by the PDQ Service, the detriment appears to have arisen at least in part from the action taken by persons other than from the Defendant Blue Shield. This was best left to the jury.

■ Another problem with Plaintiff's alleged reliance is whether it was justifiable. As a matter of law we believe it was not. The Plaintiff should have been aware of the fact that the federal procurement regulations applied to this invitation for bids, and that the regulations provide that no preference shall be given to any particular bidder. 41 C.F.R. § 1–2.301 (1976). Further the same regulations clearly required the bid proposal transmitted by the Plaintiff not to be considered once it was

1. See, *inter alia, Murphy v. Burke*, 454 Pa. 391, 311 A.2d 904 (1973); *Funds For Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 278 A.2d 922 (1971); *Utility Appliance Corp. v. Kuhns*, 393 Pa. 414, 143 A.2d 35 (1958); *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 123 A.2d 663 (1956); *Berliner v. Bee Em Mfg. Co.*, 383 Pa. 458, 119 A.2d 65 (1956); *Luther v. Coal Operators Casualty Co.*, 379 Pa. 113, 108 A. 691 (1954); *Sunseri v. Sunseri*, 358 Pa. 1, 55 A.2d 370 (1974); *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 14 A.2d 127 (1940); *Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938); *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228 (1978); *DiSante v. Russ Financial Co.*, 251 Pa.Super. 184, 380 A.2d 439 (1977); *Travelers Insurance Co. v. Hartford Accident and Indemnity Co.*, 222 Pa.Super. 546, 294 A.2d 913 (1972); *Fedun v. Mike's Cafe, Inc.*, 204 Pa.Super. 356, 204 A.2d 776 (1964); *Atlantic Refining Company Unemployment Compensation Case*, 203 Pa.Super. 262, 199 A.2d 735 (1964); *Twilley v. Pennypack Woods Home Ownership Association*, 180 Pa.Super. 20, 117 A.2d 788 (1955); *Volkwein v. Volkwein*, 146 Pa.Super. 265, 22 A.2d 81 (1941); *Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527 (3d Cir. 1970); *Kaufman v. Mellon National Bank & Trust Co.*, 366 F.2d 326 (3d Cir. 1966); *Cayuga Construction Corporation v. Vanco Engineering Co.*, 423 F.Supp. 1182 (W.D.Pa.1976); *Intermar Inc. v. Atlantic Richfield Co.*, 364 F.Supp. 82 (E.D.Pa.1973); *Harnett v. Ryan Homes, Inc.*, 360 F.Supp. 878 (W.D.Pa.1973); *North Penn Oil & Tire Co. v. Phillips Petroleum Co.*, 358 F.Supp. 908 (E.D.Pa.1973); *In re Flying W. Airways, Inc.*, 341 F.Supp. 26 (E.D.Pa.1972).

late, and to have considered it when it finally arrived late would have corrupted the entire bid procedure. 41 C.F.R. 1–2.302, 1–2.303 (1976). Because we hold as we do, we do not believe the jury should have been allowed to reach the final question of whether injustice could be avoided only by enforcement of the promise.

Even after considering the evidence in the light most favorable to the Plaintiff as we must do when the jury verdict has been in its favor, we must determine that as a matter of law the record is critically deficient of that minimum quantum of evidence from which a jury might afford relief. *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir. 1977). There was no contract properly supported by consideration and we have determined as a matter of law that the promise made was not made by an "authorized" agent. These were the grounds listed under paragraphs 1–3 in the motion for judgment notwithstanding the verdict. The other matters raised mainly concern questions of fact on which the jury could have agreed with Plaintiff rather than the Defendant. The matter of damage was raised both in the motion for judgment notwithstanding the verdict and the motion for a new trial. Damages will be discussed in the next portion of this opinion.

DAMAGES

The Defendant Blue Shield has moved for judgment notwithstanding the verdict on the ground that the fact of damages was not proved with reasonable certainty. See, *Becker v. Borough of Schuylkill Haven*, 200 Pa.Super. 305, 311, 189 A.2d 764 (1963). The Defendant also has moved for a new trial on the basis that the verdict was excessive and not based on evidence submitted to the jury.

■ In this case the Plaintiff presented testimony to the effect that had its bid been timely received it was the lowest and there would be no reason for its disqualification. The Plaintiff also presented testimony to the effect that it had a computer which would be available and which would have met the specifications. Plaintiff's president testified that he expected a $21,000 profit on this particular contract if he obtained it, but that the standard commission would be three halves of $17,500 or a total of $26,500. We cannot say then that the $13,000 verdict against Blue Shield, if considered in terms of lost profits, would be excessive, or that it was unsupported merely because it was considerably less than the testimony presented by the Plaintiff. The Defendant Blue Shield has not specifically raised the contention that under a promissory estoppel theory the remedy could be limited as justice requires, and we will not deal with that issue. Nor has the Defendant specifically raised a question as to the proper measure of damages. Generally in contract claims against the federal government disappointed bidders have been permitted to prove not loss of profits but rather bid preparation costs. *Cincinnati Electronics Corp. v. Kleppe*, 509 F.2d 1080 (6th Cir. 1975); *Savini Construction Company v. Crooks Brothers Construction Co.*, 540 F.2d 1355 (9th Cir. 1974).

■ If loss of profit can be considered to be the proper measure, the loss must be such as would naturally and ordinarily result from the breach or be such that it was reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and any damage must be capable of being proved with reasonable certainty. *Taylor v. Kaufhold*, 368 Pa. 538, 84 A.2d 347 (1951).

We believe the fact of damages was proved with reasonable certainty and that the amount found was within the jury's discretion, and therefore both the motion for judgment notwithstanding the verdict on the question of damages, and the motion for a new trial on this basis should be denied.

An appropriate order will be entered.