UNIVERSAL COMPUTER SYSTEMS, INC., Appellant in No. 79–2400,

v.

MEDICAL SERVICES ASSN. OF PA., t/a Pa. Blue Shield, Appellant in No. 79–2401.

Nos. 79–2400, 79–2401.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) May 20, 1980.

Decided Aug. 7, 1980.

---

Eric J. Wiener, Handler & Wiener, Harrisburg, Pa., for appellant in No. 79–2400 and appellee in No. 79–2401.

Robert L. Rubendall, William H. Wood, Francis J. O'Gorman, Jr., Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for appellee in No. 79–2400 and appellant in No. 79–2401.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This is a diversity action in which we are asked to consider questions of agency and promissory estoppel under Pennsylvania law. Specifically, we are asked to consider whether a principal is bound under a theory of promissory estoppel when an employee promised to pick up a bid from a potential bidder. We hold that the employee possessed apparent authority to make a binding promise on which the promisee relied to its detriment and accordingly reinstate the verdict of the jury awarding damages for the breach of that promise.

### I.

In July of 1975, Medical Services Association of Pennsylvania (Blue Shield) located in Camp Hill, Pennsylvania, solicited bids for the lease of a computer.[1] Pursuant to the bid solicitation, Universal Computer Systems, Inc. (Universal) of Westport, Connecticut, prepared a bid proposal. In order to be considered, the terms of the solicitation required that it be received by Blue Shield at Harrisburg, Pennsylvania, no later than 12:00 Noon on August 18, 1975.

Joel Gebert, an employee of Blue Shield, served as liaison between Blue Shield and prospective bidders on this contract. Shortly before the date of the bidding deadline, most probably on Friday, August 15, Warren Roy Wilson, President of Universal, telephoned Gebert and informed him that Universal could furnish a computer which would meet the required specifications. Being reluctant to entrust the bid to a conventional courier source, Wilson informed Gebert that he expected to transmit the bid via Allegheny Airlines to Harrisburg, Pennsylvania, and asked Gebert if he could arrange to have someone pick up the proposal at the Harrisburg airport on Monday morning. Gebert assured Wilson that the proposal would be picked up at the airport and delivered to Blue Shield in time to meet the bidding deadline.

On the appointed day, Wilson dispatched the bid proposal from La Guardia Airport in New York by Allegheny Airlines PDQ Service on August 18, 1975, at approximately 8:30 A.M. Wilson called Gebert again to give him the necessary information so that the bid could be picked up at Harrisburg as Gebert had agreed and timely delivered to Blue Shield. Gebert, however, informed Wilson that he had changed his mind and could not pick up the proposal. Wilson then unsuccessfully attempted to make other arrangements with Allegheny to have the proposal picked up by courier or other agents and timely delivered to Blue Shield.

Allegheny originally refused to allow anyone to pick up the proposal other than a direct employee of either plaintiff or Blue Shield. Wilson was finally able to contact the supervisors of the airline manager who instructed the manager to release the package to a courier. The bid proposal, however, was released too late to meet the noon deadline. Consequently, Blue Shield rejected the bid as untimely and returned it unopened.

Thereafter, Universal filed a complaint in the United States District Court for the Middle District of Pennsylvania seeking damages for the alleged breach of Blue Shield's promise.[2] The case was tried before a jury which returned a verdict in the amount of $13,000 against Blue Shield.

1. Our recital of the facts of this case is taken from the opinion of the district court. *Universal Computer Systems, Inc. v. Medical Services Ass'n of Pennsylvania*, 474 F.Supp. 472 (M.D. Pa.1979).

2. At the request of the parties, the action was consolidated with an action filed by Universal against Allegheny Airlines. Appeals were subsequently taken in both actions. That other appeal is not at issue in the case before us, however, and will not be discussed further.

Thereafter Blue Shield filed a motion for judgment *non obstante veredicto* (n. o. v.) and a motion for a new trial. The district court granted the motion for judgment n. o. v. but denied the motion for a new trial. Universal appealed from the court's entry of judgment n. o. v. and Blue Shield cross-appeals from the denial of its motion for a new trial.

## II.

In this diversity action brought in a Pennsylvania forum, Pennsylvania law applies as the place where the promise was made and where it was to be performed. *See Craftmark Homes, Inc. v. Nanticoke Construction Co.*, 526 F.2d 790, 792 n.2 (3rd Cir. 1975). The district court's order entering judgment n. o. v. rests on two findings. The first is that Gebert, whom Universal alleged made the promise to pick up the bid proposal, lacked actual and apparent authority to make that promise and thereby bind Blue Shield. The second is whether Wilson's reliance upon Gebert's promise was justified.

■■■ It is undisputed that Gebert lacked *actual* authority to make the promise. The issue, however, is whether he possessed *apparent* authority under Pennsylvania law to make such a promise. Under the decisional law of Pennsylvania, "apparent authority" is the power to bind a principal in the absence of actual authorization from the principal, but under circumstances in which the principal leads persons with whom his agent deals to believe that the agent has authority. *Revere Press, Inc. v. Blumberg*, 431 Pa. 370, 375, 246 A.2d 407, 410 (1968). The test for determining whether an agent possesses apparent authority is whether "a man of ordinary prudence, diligence and discretion would have a right to believe and would actually believe that the agent possessed the authority he purported to exercise." *Apex Financial*

*Corp. v. Decker*, 245 Pa.Super. 439, 369 A.2d 483, 485–86 (1976). Nevertheless, a principal is not bound by the unauthorized act of his agent if the third person had notice of the agent's lack of authority. *Schenker v. Indemnity Insurance Co.*, 340 Pa. 81, 87, 16 A.2d 304, 306 (1940).

■■■ The district court stated that Gebert "received all calls from prospective bidders and was the sole contact pursuant to the request for bids." Nevertheless, the court found that Universal should have been aware that Gebert lacked the authority to promise to pick up the bid at the airport and, therefore, Blue Shield was not bound by Gebert's promise. The court based its holding on three findings. First, it found that the bidding process was covered by the federal procurement regulations. Second, the court found that those regulations prohibited Blue Shield from showing a preference for any bidder by receiving a bid at a time or place other than that specified in the Invitation for Bids. Finally, the court found that Universal should have known that the procurement regulations applied to the bidding process and that those regulations prohibited the act which Gebert allegedly promised to perform. Accordingly, our discussion of the agency issue focuses upon the district court's conclusions about the relevance of the federal regulations.

The first two points do not require extended discussion because we believe that the district court erred in holding, as a matter of law, that Universal should have known the federal regulations were applicable. The invitation for bids apparently contained only two indications that federal procurement regulations might be applicable. There was, however, apparently no mention of the regulation at issue here, 41 C.F.R. § 1–2.301(a),[3] which the district court construed as forbidding the accommodation Gebert allegedly promised. The first mention of federal regulations occurs at page 2 of

---

**3.** 41 C.F.R. § 1–2.301(a) (1979) states:

To be considered for award, a bid must comply in all material respects with the invitation for bids so that, both as to the method and timeliness of submission and as to the substance of any resulting contract, all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained.

the Invitation for Bids and states: "specifications are presented in a 'Brand Name or Equal' modes for optional equipment, as described in Federal Procurement Regulations, Section 1–1.307–4 and 1–1.307–5 through 1–1.307–9." The second reference to federal regulations evidently appears at page 10 of the Invitation for Bids. Both parties apparently agree that the invitation did not mention the federal regulation at issue here, nor did it give any notice that federal procurement regulations were generally applicable.

In addition, Blue Shield argues that the Invitation for Bids contained a notice that the successful bidder had to be approved by the Secretary of the United States Department of Health, Education, and Welfare (HEW). Even so, that would nonetheless be insufficient to support the holding of the district court. By its ruling, the court concluded that as a matter of law a reasonable man should have been aware that the bidding procedure was governed by the federal procurement regulations. We disagree.

The references to the federal procurement regulations in the Invitation for Bids are not to the relevant regulation involving the issue before us, 41 C.F.R. § 1–2.301(a) (1979), *supra,* and the references give no notice whatever that the bid procedures are covered by the federal procurement regulations. In addition, there is no indication that the Invitation for Bids contained a copy of the relevant federal regulations. Finally, although the invitation contained a notice that the successful bidder had to be approved by HEW, we do not believe that requirement provided a sufficient basis to conclude as a matter of law that a reasonable person should have been aware that the bidding procedures were governed by the Federal procurement regulations. Thus, the district court erred in concluding that Gebert lacked apparent authority to make the promise. Therefore, the jury could conclude, as it appears to have done, that Wilson reasonably was unaware of the applicability of the federal regulations and that

they possibly interdicted Gebert's promised action.[4]

■ For essentially the same reasons, we believe that the district court erred in ruling that Gebert's promise should not be enforced on principles of promissory estoppel. To create liability on the basis of promissory estoppel, a promise must be of such a nature and made under such circumstances that the promisor should reasonably anticipate that it will induce action or forbearance of a definite and substantial character on the part of the promisee. Further, the promise must actually induce such action or forbearance and the circumstances must be such that injustice can only be avoided by enforcement of the promise. Restatement of Contracts § 90 (1932). The remedy may be limited as justice requires. Restatement of Contracts § 201 (Tent.Draft No. 2, April 30, 1965).

In the case before us, the district court found that, assuming that there had been authority to make a promise, the jury reasonably could have found that there was a promise upon which Universal had relied to its detriment. The court, however, concluded that Universal's reliance was unjustified. As we have already alluded, the court reasoned that Universal should have been aware of the federal procurement regulations and of their prohibition against the kind of service Gebert had agreed to perform for Universal. Thus, the court found Universal's reliance unjustified and declined to enforce the promise on principles of promissory estoppel. For the reasons we have stated above, however, we believe the court erred in concluding that Universal should have been aware of the applicability of federal procurement regulations to Gebert's promise to pick up their bid at the airport.

Nor do we believe that our holding is contrary to *Stelmack v. Glen Alden Coal Co.,* 339 Pa. 410, 14 A.2d 127 (1940), and *TMA Fund, Inc. v. Biever,* 380 F.Supp. 1248 (E.D.Pa.1974), as urged by Blue Shield.

**4.** It is not contended in this case that the implementation of the jury verdict would in effect negate a federal regulation and thus violate the Supremacy Clause.

In *Stelmack* the defendant coal company requested permission to enter upon the plaintiffs' land and erect supports about their building so as to protect it against damage from defendant's impending subsurface mining operations. Plaintiffs granted permission and the supports were erected. As the mining operations continued, the defendant made repairs to the building from time to time but later refused to restore it to its previous condition. The plaintiffs later brought an action, seeking to recover on various theories of contract and promissory estoppel. In rejecting the promissory estoppel theory, the court stated:

> The doctrine of promissory estoppel . . . may be invoked only in those cases where all the elements of a true estoppel are present, for if it is loosely applied any promise, regardless of the complete absence of consideration, would be enforceable.

339 Pa. at 416, 14 A.2d at 129. The court, however, proceeded to analyze the case under section 90 of the Restatement of Contracts. The court stated:

> Here no action was taken by plaintiffs in reliance upon the defendant's promise which resulted in disadvantage to them. They did not alter their position adversely or substantially. They have suffered no injustice in being deprived of a gratuitous benefit to which they have no legal or equitable right.

*Id.*, 14 A.2d at 130.

The instant case is different, however. Here it is clear that plaintiff incurred a substantial detriment as a result of relying upon defendant's promise. Plaintiff has suffered an injustice in being deprived of the service promised by Blue Shield's employee, Gebert.

*TMA Fund* is also distinguishable. There, defendants were induced to sign a promissory note to support a failing business on the false representation that other financing had also been arranged. On an action against defendants to enforce the terms of the note, the court held the note unenforceable for lack of consideration.

The court noted that TMA Fund "did not agree to do anything when the agreement and notes were executed in return for the payment on the notes. TMA Fund is to this day not required to do anything or to refrain from doing any act which it had a right to do under the terms of the purported agreement." 380 F.Supp. at 1254. In the instant case, however, Blue Shield promised to pick up the bid and Universal relied upon that promise to its detriment.

■ Accordingly, we believe that, under Pennsylvania law, the jury could reasonably have found that Gebert possessed apparent authority to make a promise binding upon Blue Shield, that Universal relied upon that promise to its detriment, and that that promise should be enforced on the basis of promissory estoppel.

### III.

■ We now turn to an examination of the damages issue raised by Blue Shield in its cross-appeal. The jury returned a verdict of $13,000 against Blue Shield. This was apparently based upon the jury's conclusion that, had Gebert's promise been carried out, Universal's bid would have been timely submitted and Universal would have been awarded the computer lease contract. The figure of $13,000 seems to represent the jury's calculation of the amount of profits lost by Universal because of Blue Shield's failure to perform its promise. The district court held that the damages were proven with reasonable certainty and that the amount awarded was within the jury's discretion. Accordingly, the court denied Blue Shield's motion for judgment n. o. v. and the motion for a new trial on this basis. On its cross-appeal, Blue Shield argues that the jury's finding that Universal suffered damages by virtue of Blue Shield's failure to carry out its promise could only have been based on conjecture and speculation. Blue Shield argues that even if Universal's bid would have been the lowest, there is no guarantee Universal would have been awarded the contract because the final contract still had to be approved by the Federal Bureau of Health Insurance. Blue Shield

points particularly to the low bid that was actually opened as not in fact having been selected for the contract which was awarded.

From our examination of the record, however, we believe that the jury could reasonably have concluded that, had Blue Shield carried out its promise, Universal's bid would have been timely submitted and it would have been awarded the contract. There is evidence, first, that had Universal's bid been timely received, it would have been the low bid. The record indicates that Universal's bid was approximately $450 per month lower than the bid submitted by the company that was awarded the contract. Second, Gebert testified that had there been a lower bid received at a point earlier in time, all other things being equal, he would have recommended that negotiations be conducted with the lowest bidder. Ray Eichelberger, Administrative Assistant to the Controller, indicated in his deposition that, all other factors being equal, "the lowest bid price would be [the] sole determining factor as to acceptability."[5] Finally, there is no evidence in the record of other factors which would have prevented an award of the contract to Universal. Eichelberger also stated in his deposition that if Universal's bid had been submitted in a timely fashion, it is likely that a contract would have been approved if the bid was the lowest on a cost basis. We therefore believe the jury could reasonably have concluded that had Gebert performed as promised and picked up Universal's bid at the airport, Universal would have been awarded the contract. Accordingly, we affirm the district court's judgment denying Blue Shield's motions for judgment n. o. v. and for a new trial on the issue of damages.

## IV.

The order of the district court denying Blue Shield's motions for judgment n. o. v. and for a new trial (No. 79–2401) will be

affirmed. The court's order entering judgment n. o. v. for Blue Shield on the issue of liability (No. 79–2400) will be reversed and the case remanded to the district court with directions to reinstate the jury's verdict. Costs taxed against Blue Shield in both appeals.

---

5. It is true that the low bidder among those bids which were opened, IPS, was not ultimately awarded the contract. Eichelberger, however, indicated in his deposition that, because of conditions attached to the bid by IPS during the initial negotiating process, IPS became "nearly the highest bidder." There is no evidence in the record that any such conditions were attached to Universal's bid.