## Pompa v. Hart

*John F. Spataro,* for plaintiff.
*Emil M. Spadafore Jr.,* for defendant.

MILLER, *P.J.,* April 29, 1992—On April 29, 1992, a nonjury trial was held before the undersigned. We now make the following memorandum and decision pursuant to Pa.R.C.P. 1038.

### STATEMENT AND FINDINGS OF FACT

On or about February 17, 1990, the plaintiff, Dennis Pompa, went to the place of business operated by the defendant, Ron Hart, to shop for a tractor. Mark Carroll accompanied Pompa to help him select a tractor. Pompa expressed interest in a used Mitsubishi tractor. A test drive of the tractor revealed that the transmission and the hydraulic system were defective. Hart told Pompa that he would fix the transmission and hydraulic system. Hart testified that there was no deadline to make the repairs. On March 2, the deal was consummated. Pompa traded-in his old tractor and paid Hart $8,490.57. The

defendant's sales slip which was signed by Pompa purported to disclaim all warranties. The tractor was delivered to Pompa on or about March 12. After delivery, Pompa discovered that the transmission and hydraulics system were still defective. Hart attempted to repair the tractor. The first repair attempt failed. After again collecting the defective tractor, Hart left the plaintiff with a substitute tractor that he could use until the tractor was fixed. Pompa testified that the substitute did not have the capabilities to perform Denlawn's landscape work. On or about April 24, Hart returned Pompa's tractor. Pompa testified that the transmission and hydraulic system were still defective. Again, the tractor was returned to Hart for repair.

The parties dispute what happened next. Pompa claimed that he called Hart to complain about the ineffective repairs and to demand the return of the old tractor he traded in. Hart told Pompa that the old trade-in tractor had been sold. Pompa stated that he needed a workable tractor by the next week. Hart allegedly said "stuff it" and returned the tractor the next day. Hart testified that he told Pompa that he could not repair the tractor until a Mitsubishi service representative was available to determine the problems and fix them. Pompa allegedly demanded the immediate return of the tractor and hung up the phone. Both parties agree that the tractor that is the subject of this action was returned on or about April 30.

Springtime is a busy time for his landscape business and Pompa needed the tractor as soon as possible. Pompa also testified that his business incurred expenses to have the tractor fixed and in being forced to perform work without the tractor. Further, Pompa stated that he lost

two landscape contracts because he did not have a suitable tractor.

Several tractor dealers who were contacted by Pompa refused to repair the tractor because they were too busy. Dennis Kiser, a tractor dealer, testified that he also was busy and agreed to repair the tractor only if Pompa would obtain the necessary parts to save Kiser's time. Pompa did collect the necessary parts. Kiser stated that the transmission and hydraulic system were defective when he examined the tractor. Kiser noticed some new parts on the transmission, but he stated that the problem went "deeper." After thoroughly examining the transmission and hydraulic system, Kiser was able to repair the tractor.

## DISCUSSION

### Terms of Contract and Performance

Article 2 of the Uniform Commercial Code governs the interpretation of the contract and the rights and obligations of the parties because the agreement is for the sale of goods, 13 Pa.C.S. §2102. Both parties agree that Hart promised to fix the tractor when the deal was consummated.

Hart's promise to repair the tractor was an express warranty, 13 Pa.C.S. §2313. An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain...." Hart promised to repair the tractor; his promise was an integral part of the bargain.

The sales slip purported to disclaim all express and implied warranties. This disclaimer will not affect the validity of the express warrant. Section 2316(a) provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate

or limit warranty shall be construed wherever reasonable as consistent with each other; but ... such *negation* is inoperative to the extent such construction is unreasonable." *Id.* (emphasis added) In this case, an express warranty was given by the seller. His express warranty cannot be negated by a standard "boilerplate" provision on the sales slip. See *Weiss v. Keystone Mack Sales,* 310 Pa. Super. 425, 431, 456 A.2d 1009, 1012 (1983). Further, Official Comment 1 to section 2316 states that section 2316 "seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with the language of express warranty...." The disclaimer provisions of the sales slip will not negate Hart's express warranty.

Pompa claims that the implied warranty of fitness for a particular purpose applies to the sale. 13 Pa.C.S. §2315. The implied warranty of fitness too applies if, "the seller at the time of contracting has reason to know ... that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods." 13 Pa.C.S. §2315(2). The record does not support the plaintiff's claim. Pompa has considerable experience in utilizing tractors for his landscape business. Further, Carroll testified that he went with Pompa to help him select a tractor. Pompa was not relying on Hart to select a suitable tractor for him. See *Sessa v. Riegle,* 427 F. Supp. 760, 770 (E.D. Pa. 1977), *aff'd,* 568 F.2d 770 (3rd Cir. 1978).

Hart claims that Pompa's alleged demand for the return of the tractor on April 30 prevented Hart from repairing the tractor and discharged any repair obligation. The court does not have to resolve who may have hung up on whom. The undisputed facts in the record indicate that Hart already had failed to fulfill his promise to repair the tractor by the time the parties' relationship was ruptured on April 30. The defendant had about a month and a

half to repair the tractor. A merchant in Hart's position knew or should have know that springtime is a busy time for the Pompa's business. Therefore, it is not reasonable for Hart to expect Pompa to wait any longer. Pompa probably would have incurred more damages if he continued to wait for Hart to try to repair the tractor. Also, Hart already made two unsuccessful attempts to remedy the tractor and admitted that he probably could not repair it until a Mitsubishi service representative was available to repair the tractor. Pompa reasonably believed that Hart was incapable of curing the defects. Hart made no attempt to contact Pompa after the April 30 conversation. In summary, Hart already had materially breached the contract by April 30. See *Massey-Ferguson Inc. v. Evans*, 406 So.2d 15, 17 (Miss. 1981) (A repair warranty implies that the seller has the capability of making such repairs or replacement within a reasonable time; this capability means the seller has personnel qualified to make the repairs); *Massey Ferguson Inc. v. Stowe*, 686 P.2d 604, 606 (Wyo. 1984) (Tractor manufacturer failed in its duty to repair tractor after several months of attempted repairs).

## DAMAGES

### A. General Damages

Pompa had accepted the tractor and did not revoke his acceptance. 13 Pa.C.S. §2606. Pompa is suing for damages because the accepted good is not as warranted.

Title 13 Pa.C.S. §2714 states:

"(a) *Damages for nonconformity of tender*—Where the buyer has accepted goods and given notification (section 2607(c)) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary

course of events from the breach of the seller as determined in any manner which is reasonable.

"(b) *Measure of damages for breach of warranty*— The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(c) *Incidental and consequential damages—In a proper case any incidental and consequential damages under section 2715 (relating to incidental and consequential damages of buyer) may also be recovered.*"

Plaintiff alleges that he spent $2,172.64 to have the tractor repaired. The defendant contends that the full sum is not recoverable because 13 Pa.C.S. §2714(b) provides a different measure of damage, to-wit: difference between "as is" and "as warranted" value. The language of section 2714(b) specifies that the "difference in value" is a possible damage formula "unless special circumstances show proximate damages of a different amount." Comment 3 to section 2714 states that "(s)ubsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as the exclusive measure." The defendant testified that the difference in value between the tractor as is and as warranted amounted to $1,000 which we find to be incredible when it did not operate properly.

All of the plaintiff's repair costs that he incurred in fixing the tractor are recoverable. Courts adjudicating damage claims under the UCC frequently use the cost of repair or replacement as an objective measurement of the difference in value between the goods as warranted and the goods as accepted. See White and Summers

*Uniform Commercial Code,* 377 (Hornbook Series, 2d Edition). See also Anderson, *Damages Under the Uniform Commercial Code,* Ch. 10, p. 16. White and Summers note that recovery of the total repair price may be inappropriate where the repair or replacement costs bring the goods to their warranted value, but this cost exceeds the difference between the value as warranted and the value as accepted. The "recovery of the excess under section 2714(2) would be inappropriate if the buyer could have minimized his loss by reselling the defective goods and purchasing replacements. If, however, replacements were unavailable, and the buyer made the expensive repairs, he ought to receive the excess under sections 2714(3) and 2715." White and Summers at 379 n. 12.

In the case at bar, Pompa, the plaintiff, appeared to undertake diligent efforts to find somebody to repair his tractor. The plaintiff had difficulty finding anybody willing to repair the tractor because they were so busy.

Plaintiff may also recover incidental damages in a proper case. 13 Pa.C.S. §2714(c). Incidental damages are "any other reasonable expense incident to the delay or other breach." Pompa had to have the tractor repaired as soon as possible to minimize any further losses to his business. The costs incurred by Pompa in repairing the tractor were reasonably incurred and incidental to Hart's breach. See White and Summers at 384-85. Therefore, the repair costs are recoverable under either section 2714, as general damage, or under section 2715, as incidental damages.

B. Consequential Damages

The plaintiff has also claimed consequential damages in the form of lost profits and extra business expenses incurred because of the Hart's breach.

In addition to general damages under section 2714, Pennsylvania allows consequential damages to be recovered. 13 Pa.C.S. §2715(b) provides that:

"(b) *Consequential damages* ... —Consequential damages resulting from the breach of the seller include:

"(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(2) injury to person or property proximately resulting from any breach of warranty."

Loss of profits, along with other consequential damages, may be recovered if the innocent party presents evidence sufficient to establish that (1) the damages were a reasonably foreseeable consequence of the breach; (2) the damages were in fact proximately caused by the breach; and (3) the plaintiff has proven the damages with reasonable certainty. *R.I. Lampus v. Neville Cement,* 474 Pa. 199, 209, 378 A.2d 288, 291-92; *Advent Systems Limited v. Unisys Corp.,* 925 F.2d 670, 680 (1991). See also *Hahn v. Andrews,* 182 Pa. Super. 338, 346, 126 A.2d 519, 521 (1956) (The party who is seeking damages for breach of contract has the burden of proving such damages with reasonable certainty).

## Reasonable Foreseeability

The Pennsylvania Supreme Court has declared: "[u]nder 2-715(2), consequential damages are proper for any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." *R.I. Lampus Co. v. Neville Cement,* 474 Pa. 199, 209, 378 A.2d 288, 291 (1977). Further, "[a] seller 'had reason to know' that which a reasonable person would have known." *Id.* at 209, 378 A.2d at 292. Comment 3 to section 2-715 also indicates that section 2-715 is a liberal damage rule.

"It is not necessary that there be a conscious acceptance of an insurer's liability on the seller's part, nor is his obligation for consequential damages limited to cases in which he fails to use due effort in good faith. Particular needs of the buyer must generally be made known to the seller while general needs must rarely be made known to charge the seller with knowledge."

"Reasonable foreseeability" was addressed by the Superior Court in *Merion Spring Co. v. Muelles Hnos. Garcia Torres,* 315 Pa. Super 469, 462 A.2d 686 (1983). In *Merion Spring,* the seller sold defective manufacturing equipment to the buyer. The buyer counterclaimed for lost profits. The Superior Courts held that the buyer's lost profits were a foreseeable consequence of the seller's breach. The seller was aware that the buyer wanted to purchase the machines to start operations in a new manufacturing plant that was being built in Mexico. Therefore, the seller had reason to know that lost profits would likely result from a material breach on its part. *Merion Spring* at 486, 462 A.2d at 695.

In the case at bar, the defendant had reason to know that his breach of the repair warranty would result in extra expenses and lost profits for the plaintiff's business. Hart is an experienced tractor dealer. He knew or should have in the springtime Pompa would need a suitable tractor as soon as possible.

Reasonable Certainty/Proximate Cause

In *Merion Springs, supra,* the Superior Court noted that "reasonable certainty" is required for both the *fact* of loss and the *amount* of loss sustained. *Merion Spring* at 487, 462 A.2d at 696 n.8. In *Merion,* the trial court had entered a J.N.O.V. that vacated the lost-profit damages awarded by the jury on the ground that the losses had

not been proven with sufficient certainty. On appeal, the Superior Court noted that the plaintiff's general manager provided information about the economic and political conditions in Mexico. Although the general manager did not perform any mathematical calculations when he testified, he sufficiently "explained the operations necessary to perform them." Also, the information relied on by the general manager came from his own knowledge. Consequently, the court held that the lost profits were proven with sufficient certainty. *Id.* at 489, 462 A.2d at 697.

The court in *Universal Computer v. Medical Services Association*, 474 F. Supp. 472 (M.D. Pa. 1979), *aff'd in part, modified in part*, 628 F.2d 820, 825-26 (1980) (damage award affirmed) upheld a damage award that was based on the president's testimony. Universal Computer, which had prepared a bid for leasing a computer, claimed that one of the defendants had not fulfilled its promise to deliver the bid. As a result, the plaintiff was not awarded the contract. 474 F. Supp. at 472.

The defendant moved for a J.N.O.V. on the ground that the damage award had not been proven with reasonable certainty. The court noted that the plaintiff presented testimony that its bid would have been the lowest and it would have received the contract if the bid had been delivered. The plaintiff's president testified that he expected a $21,000 profit on the contract. The court stated that the $13,000 in lost-profit damages awarded by the jury was not unreasonable in view of the testimony. *Id.*

In the case at bar, Pompa has alleged that he lost two landscape contracts because he did not have a suitable tractor. He did not present any information to determine how much of the contracts prices would have resulted in a profit. Therefore, Pompa has not proven the alleged lost profits with sufficient certainty.

Some of the extra cost Pompa allegedly suffered because his business had to perform landscape work without a suitable tractor are supported by the evidence. The plaintiff presented documents listing the expenses. Pompa is a sole proprietor and had personal knowledge of how the additional expenses were incurred and how the figures were calculated. Further, Pompa testified that all the additional expenses were the direct result of his business being forced to make do without a tractor. Consequently, the proximate cause requirement is satisfied. See *National Controls Corp. v. National Semiconductor Corp.*, 833 F.2d 491, 496 (3rd Cir. 1987) (Proximate causation requirement demands that the plaintiff prove that the defendant's breach was a substantial factor in causing some harm).

## Mitigation of Damages

The defendant claims that the plaintiff failed to mitigate his damages. "[Mr. Pompa] chose a person to perform the repairs who could not provide cover and who required Mr. Pompa to obtain parts and thus expend his own time." See Defendant's Brief at 5. The plaintiff does have a duty to make a *reasonable* effort to mitigate his losses. *Bafile v. Borough of Muncy,* 527 Pa. 32, 588 A.2d 462, 464 (1991), *reh'g denied.* The courts, however, do not require an innocent party to undertake extraordinary measures to avoid any loss. See Anderson, *Damages Under the Uniform Commercial Code,* Ch. 10, p. 15. In *State Public School Building Authority v. W.M. Anderson Co.,* 49 Pa. Commw. 420, 410 A.2d 1329 (1980), the school and an electric contractor entered into an agreement. A dispute arose between the defendant and another electric contractor involved in the same project. Eventually, the

defendant contractor installed some wiring. The cost was unusually high because the contractor installed its own conduit and did not use the conduit installed by the second contractor. The school claimed that it should have been notified of the dispute between the two contractors and refused to pay for the second conduit.

The court considered the issue a mitigation of damage problem. The court held that the school authority failed to prove that the installation of the second conduit was an avoidable expense. As a result, the contractor was entitled to restitution damages, *Anderson* at 424, 410 A.2d at 1331.

The 3rd Circuit addressed the extent of an innocent party's duty to mitigate damages in *In re Kellett Aircraft Corp.*, 186 F.2d 197 (3rd Cir. 1950). The debtor, Kellett Aircraft Corp., breached its contract to make and assemble stall showers for Amerform Corp. Amerform chose another manufacturer to do the work even though a third manufacturer could have done the job at a lower cost. Amerform's decision was based on past satisfactory dealings with the chosen manufacturer and the manufacturer's promise to start work immediately. The court held that Amerform acted reasonably in mitigating its damages. 186 F.2d at 198-99,200.

The Circuit Court declared:

"Whether or not the buyer's obligation to mitigate damages has been discharged depends on the reasonableness of its conduct. In this connection, reasonable conduct is to be determined from all the facts and circumstances of each case, and must be judged in the light of one viewing the situation at the time the problem was presented.... The rule of mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party...." *Id.* at 198.

In the case at bar, the defendant did not present any evidence about who could have repaired the tractor for a lower price than Kiser. Pompa testified that he had difficulty finding anybody willing to repair the tractor. Pompa needed to find someone who would repair the tractor as soon as possible. In view of the situation at the time the problem was presented, Pompa acted reasonably in mitigating his losses. See *Esksel v. Orleans Construction,* 360 Pa. Super. 119, 132, 519 A.2d 1021, 1028 (1987) (Party who suffers a loss has a duty to make a reasonable attempt to mitigate damages, but burden is on party who breaches contract to show how further loss could have been avoided through reasonable efforts of injured party); *S.J. Groves & Sons v. Warner Co.,* 576 F.2d 524, 529-30 (1978) (Under Pennsylvania law, the burden of proving that losses from breach of contract could have been avoided by reasonable effort and expense must be borne by party who has broken contract).

We will not award the plaintiff his claimed employee expense because it was not adequately proven by the fair weight of the evidence. The plaintiff claims that he incurred extra work because he did not have the tractor. He submitted an exhibit in support of that claim. It occurs to this court that the plaintiff would not be entitled to recover the gross amount of the extra work but merely the difference between the "extra cost" of doing the work without the machine compared to doing the work with the machine. That was never explained to the satisfaction of this court. For instance, the work on May 9, 1990, of loading a dump truck apparently took 1.5 hours by hand. We don't know how much time it would have taken with a machine nor do we know the cost of using the machine. It may well be that even though there would be more labor in loading by hand it may be cheaper to load by hand than by a machine because of the cost of the operation of the machine.