**MASSEY FERGUSON, INC., a Maryland corporation, Appellant (Defendant),**

v.

**Ralph V. STOWE, Appellee (Plaintiff).**

**No. 83-240.**

Supreme Court of Wyoming.

Aug. 29, 1984.

Rehearing Denied Sept. 27, 1984.

Joel M. Vincent of Hettinger & Leedy, P.C., Riverton, for appellant.

F.M. Andrews, Jr., of Andrews & Andrews, P.C., Riverton, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Ralph V. Stowe, appellee, sued Massey Ferguson, Inc., appellant, a Maryland corporation, for breach of an implied warranty and breach of an express warranty. The jury returned a verdict in favor of Stowe to which Massey Ferguson takes exception. We will affirm the verdict with some modification of the damage award.

The issues presented by Massey Ferguson are:

"1. Whether the jury's verdict in favor of Stowe was supported by the evidence.

"2. Whether the trial court should have directed a verdict in appellant's favor or entered a judgment notwithstanding the verdict after the return of the verdict in favor of the appellee.

"3. Whether there existed sufficient evidence as a basis for the jury to find that damages for two crop years were within the contemplation of the appellant and appellee at the time of the execution of the sale contract concerning the tractor in question.

"4. Whether appellee properly mitigated his damages.

"5. Whether there was sufficient evidence for the jury to determine that amount of damages set forth in the verdict returned by the jury."

Stowe purchased a Massey Ferguson 2805 tractor on March 31, 1981, for $66,150. The purchase was accomplished by an installment contract. Stowe made a down payment of $33,339.45; the balance of $32,810.51 was financed by Massey Ferguson Credit Corporation (hereinafter Massey Credit).[1] Stowe was advised by Massey Ferguson that the tractor carried a two-year warranty or 1,500 hours. Stowe missed his first payment due on November 1, 1981. Three weeks later Stowe's son was using the tractor and testified that a pin holding the manure spreader to the draw bar of the tractor slipped out, allowing the manure spreader to come forward and strike the differential housing, which cracked it and caused hydraulic fluid to leak out.

Stowe informed the Massey Ferguson dealer, A & I Equipment (hereinafter A & I) of the damage to the tractor on November 25, 1981. A mechanic from A & I accompanied Stowe to his farm and examined the tractor. Stowe expressed a preference that the differential housing be welded if the crack was small. Because of the cold weather, the welding could not be accomplished until early December. The weld proved to be unsuccessful; the differential housing continued to leak.

Next, the area finance manager for Massey Credit, Hubbard, had a conversation with Stowe about his delinquent payment. Hubbard was informed of the problem; Stowe indicated that he did not want to pay until the tractor was fixed. Hubbard then suggested that Stowe contact the Massey service representative, but urged him to make the delinquent payment.

On December 10, 1981, the Massey service representative, Brooks, called Stowe to discuss the accident and explained that if Massey could not have the housing welded to his satisfaction that they would replace it as the damaged part was under warranty. Two other attempts to weld the housing failed.

Hubbard again contacted Stowe on February 19, 1982, and requested that Stowe make the payment which was now 111 days late. Stowe informed Hubbard that the housing was still leaking and that Hubbard might as well take the tractor. Hubbard took possession of the tractor and eventually sold it.

In the meantime, A & I went out of business, which left Stowe with no place to repair the tractor. Stowe was informed two months after the repossession that he could take the tractor to Lingle, at his own expense, for the repairs. Stowe was never informed that he could obtain the defective

---

**1.** Massey Ferguson Credit Corporation is a wholly-owned subsidiary of Massey Ferguson, Inc., although the parties here in their dealings did not always recognize two separate entities.

part prepaid and have it installed by a Massey-approved mechanic in Riverton, where he lived.

Stowe testified that he suffered financially due to the loss of one of his large tractors in both 1982 and 1983. He testified that his yield was down because of late planting for lack of equipment; that he was forced to hire work done on the farm which he had never done before; that he had to borrow a neighbor's tractor on a couple of occasions; that he hired custom farming; that he had to rent a tractor for three months; and that he could not plant all the ground he intended to plant. Stowe's estimated total damages because of the loss of the tractor were $116,231. Stowe said that he did not redeem the tractor at the sale because he could not afford it and that he did not buy another tractor for the same reason. The jury returned a verdict for $102,944 in favor of appellee. Judgment was entered for $103,-195, which included costs.

When reviewing cases before us on appeal, we accept the evidence of the prevailing party as true. We will not disturb the trier of fact's findings unless they are totally in conflict with the great weight of evidence. *Agar v. Kysar*, Wyo., 628 P.2d 1350 (1981).

■ The jury's verdict in favor of Stowe is supported by substantial evidence. It was well within the province of the jury to find that the defective tractor part was covered by the manufacturer's warranty. Stowe testified that he was told upon purchasing the tractor that it was warranted for two years or 1,500 hours. Brooks, the Massey Ferguson service representative, testified that the damaged part was covered by the manufacturer's express warranty. The jury could have also found that Massey Ferguson, as a manufacturer of agricultural farm tractors, had not delivered a tractor to Stowe that was merchantable or fit for the ordinary purpose for which the goods are used which would be a

breach of an implied warranty. Section 34-21-231, W.S.1977.

Massey Ferguson undertook to fulfill its duty, created under warranty, by attempting to repair the tractor sold to Stowe. The problem is that the tractor was not repaired before repossession nor was it apparent to Stowe that the tractor could or would be repaired until sometime after repossession. The tractor was useless to Stowe in the damaged condition and he felt it was better not to pay the installment and retain some leverage against Massey Ferguson than to pay the installment and not have the tractor repaired. Stowe indicated in his testimony that he would not pay the installment until the tractor was repaired.

Appellant argues that it was in the process of repairing the tractor; and therefore, there was no breach; that it was not aware of the Massey Credit repossession; and that all implied warranties were properly excluded pursuant to § 34-21-233(b), W.S.1977. From the evidence produced at trial, it is clear to us that the repairs required to fix Stowe's tractor were covered by express warranty; therefore, we will not discuss whether or not an implied warranty existed. It is also clear to us that appellant was in the process of repairing the tractor. However, appellant had been attempting to repair the tractor from November 25, 1981, until repossession and even some months later. During this time the efforts of Massey Ferguson to repair the tractor and communicate with Stowe were less than diligent. In fact, Massey Ferguson was not even aware of the fact that its wholly-owned subsidiary, Massey Credit, had repossessed the tractor. Massey Ferguson did not fulfill its duty to repair the tractor and is liable for the injury to Stowe, which was proximately, and in fact, caused by the defect in the tractor. See White and Summers, Uniform Commercial Code, Chapter 9, Warranty, p. 272 (1972).

■ Next, we will discuss the damages awarded to Stowe. The facts of this case do not squarely fit within any of the formu-

las for damages under the Uniform Commercial Code. The attorneys and court proceeded to resolve the damages questions to the best of their abilities considering the facts which they had to work with. We would not cite this case as a model on proof of damages. We are not convinced that appellee's theory of damages is entirely correct, and we also see deficiencies in appellee's proofs. However, no objections were made at trial, nor does appellant object here. The instructions which were given to the jury in regard to damages were discussed by the court and counsel and neither party objected to them. There was no objection to the instructions at any time in this litigation nor were they argued against when appellant made a motion for a directed verdict or motion for judgment not withstanding the verdict. Even in appellant's appeal to this court there is no mention of improper instructions on the issue of damages; appellant has consistently argued against the jury's finding of liability. We cannot say as a matter of law that the instructions given were erroneous. Therefore, we accept the instructions given as the law of this case and will discuss damages in relationship to such instructions.

Section 34–21–293, W.S.1977, was given to the jury as Instruction No. 12 and is the principal uniform commercial code section which governs the right of a buyer who has accepted nonconforming goods and neither rejected them nor revoked acceptance of them. See White and Summers, supra, Chapter 10, Damages for Breach of Warranty, p. 306. Section 34–21–293, states:

"(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(c) In a proper case any incidental and consequential damages under the next

section [§ 34–21–294] may also be recovered."

Section 34–21–294, W.S.1977, states:

"(a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(b) Consequential damages, resulting from the seller's breach include:

"(i) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(ii) Injury to person or property proximately resulting from any breach of warranty."

■ Upon careful review of the record we find that the damages awarded by the jury include all of the damages claimed by appellee and are supported by evidence contained in the record with two exceptions. First, there is no evidence in the record to support or justify the recovery by Stowe of the full purchase price of the tractor. Stowe paid $33,339.45 for the tractor, leaving a balance due of $32,810.51. The primary objective of damages is to compensate for loss; therefore, Stowe is entitled to recover the amount he paid for the tractor together with other incidental and consequential damages he incurred as a result of the breach by appellant. We will reduce the amount awarded by $32,810.51.

The second exception is that Stowe notified Massey Ferguson of the damage to his tractor on November 25, 1981, and the tractor was repossessed on or about February 19, 1982. We think it is reasonable to award Stowe the damages he incurred in 1982; however, the damages which accrued in 1983 of $10,703.50 are not reasonable.

Stowe claims that he did not pursue the purchase of a new tractor or attempt to redeem the old one because he was not financially able to do so. Lack of sufficient funds to minimize damages caused by the breach can be an excuse for failure to mitigate. *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir.1975). However, we cannot allow the damages caused by the breach to continue indefinitely. One year of damages is a reasonable award under the circumstances of the case.

Stowe is entitled to recover the amount found by the jury plus the costs that the trial court awarded minus the unpaid portion of the tractor and the damages incurred in 1983. Stowe's total damages are $59,680.99.