State Public School Building Authority, Petitioner *v.* W. M. Anderson Company, Respondent.

Submitted on briefs, November 16, 1979, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*James R. Clippinger,* for petitioner.

*Malcolm L. Lazin,* of *Fell, Spalding, Goff & Rubin,* for respondent.

OPINION BY JUDGE BLATT, February 22, 1980:

This is an appeal from an order of the Board of Claims (Board) which awarded damages to W. M. Anderson Co., Inc. (respondent) in restitution for uncompensated electrical work which the respondent furnished for the petitioner, the State Public School Building Authority (School Authority). The controversy arose out of a contract between the School Authority and the respondent for wiring for a School Authority building project.

In February of 1976, a dispute arose between the respondent and another electrical wiring contractor involved in the same project here concerned regarding who was obligated to install certain wiring. After meeting with both contractors and reviewing the terms of the contract, the School Authority directed the respondent to install the wiring, and, in complying with this order, the respondent incurred an expense to itself of $25,348.54. This expense was unusually high because the respondent installed an additional wiring conduit rather than using an existing conduit which had been installed by the other contractor for the wiring it did. Having been refused compensation by the School Authority for this extra expense, the respondent appealed to the Board and the Board ordered the School Authority to pay restitution damages of $25,348.54. The School Authority does not now contest the Board's interpretation of the contract, but contends only that the Board had no

jurisdiction over the contract dispute or, in the alternative, that the Board should have found that the respondent incurred an unnecessary expense in installing the conduit and unreasonably failed to mitigate the loss incurred.

The School Authority contends first that its resolution of the dispute was a discretionary governmental act, much like its awarding of contracts pursuant to competitive bidding, and that such a discretionary act cannot be overturned absent a showing of fraud, collusion or bad faith. We find no merit to this argument. It is incontrovertible, of course, that the Commonwealth has waived its immunity to suit for actions arising out of contract,[1] and we have consistently held that the Board has exclusive jurisdiction over contract actions against the Commonwealth. *Vespaziani v. Department of Revenue,* 40 Pa. Commonwealth Ct. 54, 396 A.2d 489 (1979). We note with regard to discretionary actions of agents of the Commonwealth that Section 5110(b)(3) of the Judicial Code, 42 Pa. C.S. §5110(b)(3), provides that the Commonwealth can provide that certain acts be carried out in the discretion of its agents, but we can find no provision in the State Public School Building Authority Act, Act of July 5, 1947, P.L. 1217, *as amended,* 24 P.S. §791.1 et seq., providing the School Authority with such discretion or limiting our scope of review over suits involving contracts with the School Authority.

As for the mitigation of damages, the School Authority contends that, after it directed the respondent to complete the wiring, a further dispute arose concerning the respondent's use of the existing conduit and, for reasons which are unclear, the respondent

---

[1] *See* the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-1 et seq.

installed a second conduit. The School Authority argues that the respondent's failure to notify the School Authority of the dispute with the other contractor, as required by the contract for arbitration purposes, resulted in the unnecessary expense of installing the second conduit.

It is a familiar rule of law that a party who suffers a loss due to a breach of contract has a duty to make reasonable efforts to mitigate his losses. *Gaylord Builders, Inc. v. Richmond Metal Manufacturing Corp.,* 186 Pa. Superior Ct. 101, 140 A.2d 358 (1958). Put another way, the amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them.[2] Furthermore, the party who has breached the contract or caused the loss has the burden of showing that the losses could have been avoided through the reasonable efforts of the damaged party. *Williams v. Masters, Mates & Pilots of America, Local No. 2,* 384 Pa. 413, 120 A.2d 896 (1956); *S. J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524 (3d Cir., 1978).

Based on a careful review of the testimony before the Board, which focused almost entirely on the interpretation of the contract and only peripherally on the issue of mitigation, we must conclude that the School Authority failed to show that the installation of the second wiring conduit was an avoidable expense, that it failed to show that it was without notice of the dispute concerning the conduit, and that it failed to show what portion of the $25,348.54 expense was avoidable.

The respondent's sub-contractor, who actually installed the additional conduit, testified that, during the work delay resulting from the School Authority's

---

[2] *See* Restatement of Contracts §336 (1932).

resolution of the original dispute, the first conduit was "roughed in" by another contractor, making it inaccessible for additional wiring. Thus, according to the sub-contractor, the installation of the second conduit was the least expensive method to complete the wiring. This evidence was not contradicted by the School Authority. The sub-contractor also testified that the School Authority was aware of the installation of the additional conduit; hence even if the expense was avoidable, the School Authority itself failed to prevent its occurrence. Again, this evidence was not rebutted by the School Authority. Finally, the School Authority presented no evidence whatever concerning the dollar amount of the allegedly avoidable loss.

We believe, therefore, that the Board properly declined to find that the respondent's losses were avoidable. Accordingly, we will affirm the Board's order.

ORDER

AND Now, this 22nd day of February, 1980, the order of the Board of Arbitration of Claims in the above-captioned matter is affirmed.

This decision was reached prior to the death of President Judge BOWMAN.

Judge DiSALLE did not participate in the decision in this case.