**In re William C. ROWLAND, Jr., Debtor.**

**No. 01–18423 SR.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 10, 2003.

George Conway, Esquire, Office of The U.S. Trustee, Philadelphia, PA.

Maureen Steady, Esquire, Ciardi, Maschmeyer, & Karalis, Philadelphia, PA.

John Laskey, Esquire, Dilworth, Paxson LLP, Cherry Hill, NJ.

Kevin Anderson, Esquire, Elliott Reihner Siedzikowski & Egan, P.C., Blue Bell, PA.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction

Before the Court is a landlord's limited objection to the above Debtor's Motion for Approval of an Assumption and Assignment of the parties' lease agreement. The basis for the objection is the landlord's demand for the inclusion of legal fees and interest as components of the cure amount due it under 11 U.S.C. § 365(b)(1). For the reasons which follow, the Court finds

that neither the legal fees nor interest are recoverable.

**Background**

The Debtor in this case, William C. Rowland, is the principal of a group of now defunct corporations, one of which is known as American Appliance Inc., ("AAI"). Prior to its failure, the corporate group operated a regional chain of retail appliance stores. The typical structure of the interrelationship between the Debtor and the corporate group was for the Debtor to acquire an interest in a parcel of realty which was improved with a commercial building, or on which he would construct such a building, and for one of his corporations to thereafter operate a retail appliance store on the site. The Debtor, however, would individually remain owner of the building and any interest in the ground on which it stood. The various corporations which comprised the Debtor's corporate group, including AAI, ceased operations and filed individual Chapter 11 cases in the District of New Jersey on April 27, 2001. These cases were converted to Chapter 7 on June 27, 2002, and they remain pending there. The present dispute involves a leasing transaction which features the typical characteristics hereinbefore described.

In this respect, the Debtor is the purchaser, (as successor to AAI) under a certain Building Sale, Ground Sublease and Non-exclusive Parking Facility License Agreement, dated February 29, 2000, (the "Sublease"). The Seller thereunder is Fort Worth Associates, Ltd., a Florida Limited Partnership ("Fort Worth"). The Sublease relates to a commercial building and parcel of realty located at 810 Plaza Boulevard, Lancaster, Pennsylvania. Under the Sublease the Debtor purchased an existing building and acquired a leasehold estate in the realty. The Debtor financed the acquisition with a mortgage loan in the amount of $1,372,125 from an institution known as Founders Bank ("Founders").

It is unclear from the record exactly when closing on the Sublease transaction occurred. However, on October 31, 2002, Founders and Fort Worth entered into a separate agreement which called for Fort Worth to give Founders notice of any defaults on the part of the Debtor under the Sublease, together with the right to cure the same within thirty (30) days. ("The Founders/Fort Worth Agreement").

The present bankruptcy case was filed on June 5, 2001. Prior to that date the Debtor was in default under the Sublease by reason of the non-payment of $23,551.33 in real estate taxes for calendar year 2001. Without notice to Founders, Fort Worth paid these taxes. The Debtor again failed to pay taxes which fell due for calendar year 2002, but Fort Worth made no payment of these.[1] Fort Worth apparently notified Founders of the Debtor's non-payment of the 2002 realty taxes in late October, 2002, but did not afford it thirty days to cure the default. Instead, within a few days thereafter Fort Worth filed a Motion requesting relief from the automatic stay, or in the alternative, an Order directing the Debtor to assume or reject the Sublease, pay the outstanding realty taxes, and reimburse Fort Worth for the 2001 taxes it had paid. On November 27, 2002, following an expedited hearing on Fort Worth's Motion, an Order was entered which provided that Founders would pay the outstanding 2002 realty taxes by December 2, 2002. Provided that payment was made, the automatic stay would re-

---

1. The 2002 taxes in question were, as follows: The City of Lancaster in the approximate amount of $20,725.27; the County of Lancaster in the approximate amount of $6,540.47; and the School District of Lancaster in the approximate amount of $46,231.34.

main in place and the time within which the Debtor would be given to assume or reject the Sublease would be extended until January 10, 2003. The Order specifically reserved to the parties (i.e., the Debtor, Fort Worth and Founders) all of their respective rights vis-a-vis Fort Worth's claim for reimbursement of its legal fees.

Both the Debtor and Founders had hoped that in the period intervening between November 27, 2002 and January 10, 2003, a third party might be located to whom the Debtor could sell its rights in the Sublease and accompanying building. Barring this, however, it was the parties' expectation that, after notice to creditors, Founders would agree to purchase these interests from the Debtor, subject, of course, to higher and better offers.

Founders timely paid the 2002 realty taxes pursuant to the November 27, 2002 Order, but no third party purchaser for the Debtor's interest in the Sublease and building came forward. The parties' fallback agreement vis-a-vis, transfer of the Sublease therefore obtained.

On January 10, 2003, the Debtor accordingly filed a Motion to Assume the Sublease and assign it to Founders. No higher or better offers materialized, but on January 28, 2003, Fort Worth filed an Objection to the Motion, the principal thrust of which was that to succeed on the Motion the Debtor had to cure all existing defaults under the Sublease, and that in this instance the Debtor's monetary default consisted of the 2001 realty taxes Fort Worth had paid, interest thereon at the rate of 18% per annum, and all of the legal fees Fort Worth had incurred since the commencement of the Debtor's bankruptcy case.

The Debtor and Founders filed written responses to this objection, conceding Fort Worth's entitlement to the 2001 taxes in the amount of $23,551.33, but disputing its entitlement to interest or legal fees. The parties were afforded an opportunity to resolve their dispute amicably, but they were unable to do so. The matter was thereupon set down for hearing on March 13, 2003. On March 6, 2003, apparently in anticipation of the forthcoming hearing, Fort Worth filed a document which purported to clarify and update its demands regarding interest and legal fees. According to this document, Fort Worth seeks interest on the 2001 realty taxes in the amount of $6,347.72, and legal fees in the amount of $17,001.58 through March 6, 2003. At the conclusion of the hearing on March 13, 2003, the Court approved the Debtor's request to assume and assign the Sublease to Founders, subject to payment to Fort Worth of the 2001 realty taxes, and the escrow at closing of the entirety of the amount in controversy with respect to interest and legal fees, the resolution of which question the Court took under advisement. Having considered the parties' arguments, the Court finds Fort Worth's legal position untenable as to both interest and fees.

## Discussion

■■■■ There is no dispute that in order for a debtor to assume an executory contract, it must cure existing defaults. 11 U.S.C. § 365(b)(1). The weight of authority however holds that § 365(b)(1) of the Bankruptcy Code does not provide an independent right of recovery to attorneys fees or, for that matter, to any other component of a cure amount. *See e.g., In re Child World, Inc.*, 161 B.R. 349, 353 (Bankr.S.D.N.Y.1993) *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 607–608 (Bankr. E.D.Pa.1989) Rather, claims relative to amounts necessary to cure a lease default must be traced to and flow from the relevant lease agreement. In this instance, Fort Worth bases its entitlement to interest on paragraph 6 B and 6 J of the

Sublease, which sections provide that sums, such as real estate taxes, which are the responsibility of the purchaser under the Sublease (i.e., the Debtor) shall bear interest at the rate of 18% per annum once overdue and until paid. Fort Worth theorizes that having paid the 2001 taxes itself, it is entitled to 18% interest on that sum from the date of payment forward.

Fort Worth's request for attorneys fees is based on paragraph 8(B) of the Sublease, which Section provides, as follows:

> *Prime Sublease.* Purchaser shall indemnify, defend, save from liability and hold harmless Seller, the lessor under the Prime Sublease, and the fee title holder of Parcel 3 and the Adjacent Parcel from and against any and all loss, cost, expenses, actions, causes of actions, liabilities, damages or other claims, including their attorneys' fees and costs, direct or indirect, foreseen or unforeseen, arising from or relating to the performance or non performance by Purchase of the obligations in any manner arising out of or relating to the Prime Lease or this Agreement.

In the abstract, the Court finds that the above provisions as to interest and legal fees are valid and enforceable parts of the parties' contract. The inquiry, however, does not end there. The Debtor and Founders argue that the legal fees in question must in all events be reasonable in amount, and must also correspond in some way to the enforcement of Fort Worth's rights under the Sublease. As to the former, the Debtor and Founders argue that in numerous instances the legal bills in question (which were appended to Fort Worth's March 6, 2003 filing) reflect excessive time charges. Furthermore, they argue that many of the charges in question relate to legal services which are unrelated

to the enforcement of Fort Worth's rights under the Sublease (such as "general bankruptcy case monitoring") and which are not therefore recoverable under the Sublease. Fort Worth, for its part, disagrees that its legal bills are either unreasonable or outside the ambit of Sublease.

Of greatest significance for present purposes, however, the Debtor and Founders point to the fact that the Founders/Fort Worth Agreement called for Fort Worth to give Founders notice of any monetary default by the Debtor under the Sublease. The Debtor and Founders argue that had the required notice been given, the taxes would have been paid and no recoverable legal fees would have been incurred, nor would accrued interest be implicated. In this respect, the Founders/Fort Worth Agreement provides at paragraph 2 thereof as follows:

> 2. In the event that the Sub–Lessee is in default under the terms of the Agreement, SUBLESSOR will give notice of default to LENDER and grant to LENDER the right, but not the duty, to cure such default for a period of thirty (30) days after the date of such notice.

Although Fort Worth has candidly acknowledged herein that there was no particular reason that the notice required under the above paragraph was not given,[2] it argues that this is nevertheless an irrelevancy because that issue is one between itself and Founders, whereas the dispute before the Court exists between itself and the Debtor. This argument puts too fine a point on things.

Leaving aside for the moment the question of whether the 2001 taxes would in fact have been paid by Founders had the notice been given, and leaving aside also the questions of the reasonableness of the legal fees in question, the scope of the

**2.** *See* N.T., hearing of March 31, 3003 at 14–15.

legal services, and the accrual of interest, the Court finds that the entitlement of Fort Worth, to either fees and/or interest fails as a threshold matter on the basis that Fort Worth, in disregarding the key notice provision of the Founders/Fort Worth Agreement, is guilty of failing to mitigate its damages as clearly required under applicable principles of Pennsylvania non-bankruptcy law. The Court concludes that this failure wholly undercuts Fort Worth's entitlement to the relief sought herein.

■ Under Pennsylvania law a party who suffers a loss due to a breach of contract has a duty to make reasonable efforts to mitigate his losses. "Put another way, the amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them." *State Public School Building Authority v. W.M. Anderson Co.,* 49 Pa.Commw. 420, 423, 410 A.2d 1329, 1331 (1980) (citation omitted).

In its decision in *Koppers Co., Inc. v. Aetna Casualty and Surety Co.,* 98 F.3d 1440 (3rd Cir.1996), the Third Circuit provided a synopsis of the law governing mitigation of damages in Pennsylvania. The Court stated, in relevant part:

> As a matter of general contract law, the Pennsylvania Supreme Court has held that a plaintiff's duty to mitigate its damages arises upon the defendant's breach of the contract (citations omitted). . . .
>
> Mitigation is an affirmative defense, so the burden of proving a failure to mitigate is on the defendant (citations omitted). To prove a failure to mitigate, a defendant must show: (1) what reason-

able actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced. (citation omitted)

*Koppers,* 98 F.3d at 1448.

■ The duty to mitigate damages prevents a party from recovering damages which the injured party could have avoided without undue risk, burden or humiliation. *Restatement (Second) of Contracts* § 350(1) (1979). The duty to mitigate is not necessarily an absolute defense, but rather concerns the amount of damages a plaintiff can recover. "[T]he amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them." *Turner Construction Co. v. First Indemnity of America,* 829 F.Supp. 752, 761 (E.D.Pa. 1993); *see also S.J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524, 528, n. 5 (3d Cir.1978); 5A *Corbin on Contracts* § 1039 (1964). Thus, the duty to mitigate functions as a tool for a defendant to lessen a plaintiff's recovery. The question of how much, if any, a plaintiff's recovery should be reduced due to a failure to mitigate, like the applicable question of the reasonableness of a plaintiff's behavior in the face of the breach, is one of fact.[3]

Having considered the present scenario against the above principles of law, the Court concludes that the record clearly establishes that Fort Worth failed to satisfy its common law duty of mitigation. To recapitulate, Fort Worth failed to provide Founders with the default notice required under the Founders/Fort Worth Agreement. Moreover, it has candidly admitted that it has no excuse or even an explanation for this failure. The effort required in

---

**3.** In determining whether a claimant has acted appropriately to mitigate damages, the test to be applied is one of reasonableness. *Air-* *craft Guar. Corp. v. Strato–Lift, Inc.,* 991 F.Supp. 735, 738 (E.D.Pa.1998)

sending the notice would obviously have been minimal, and no material prejudice would have attached, because Fort Worth was only required to wait thirty (30) days before acting to protect its own interest. It bears emphasis, furthermore, that the party to whom the default notice was to have been sent was a bank with a substantial mortgage lien on the leasehold estate and improvements. With this stake in the outcome, there is more than good reason to assume that had the notice been given, the taxes in question would have been paid by the Bank. Indeed, one result of Fort Worth's precipitous motion to lift the automatic stay, was the prompt payment by the Bank of the unpaid 2002 realty taxes.

In sum, although the Founders/Fort Worth Agreement is indeed separate from the Sublease, its provisions are not, as Fort Worth argues, irrelevant herein. Fort Worth's out of pocket expenses are the product of its own inaction. The Court holds that Fort Worth's entitlement to the fees and interest it seeks herein must fail by virtue of its own failure to have taken steps to mitigate its damages.[4]

An appropriate Order follows.

### ORDER

**AND NOW**, upon consideration of the issues relative to the Debtor's assumption and assignment of its Sublease with Fort Worth Associates, as were reserved in this Court's Orders of November 27, 2002, and April 2, 2003, it is hereby:

ORDERED, that Fort Worth's request for the inclusion of interest and legal fees as additional components of the amount required to cure the Debtor's monetary de-

fault under the Sublease shall be and hereby is Denied.

---

4. The disposition reached herein renders it unnecessary to devote further attention to the parties' dispute over the reasonableness of the legal fees in question or the scope of the legal services rendered by Fort Worth's counsel.