# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Serge Vladimirsky,             :
           Petitioner       :
                       :
           v.              :
                       :
School District of Philadelphia,    :    No. 732 C.D. 2018
          Respondent    :    Submitted: March 14, 2019


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge (P.)
              HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                     FILED: April 2, 2019

Serge Vladimirsky (Vladimirsky) petitions this Court for review of the Secretary of Education's (Secretary) May 1, 2018 order awarding him $21,561.00 for lost compensation during 2011 and 2012. Essentially, Vladimirsky presents three issues for this Court's review: (1) whether the Secretary properly calculated Vladimirsky's compensation; (2) whether the School District of Philadelphia (District) violated Vladimirsky's due process rights; and (3) whether the Secretary was required to address additional issues.[1] After review, we vacate and remand.

---

[1] Vladimirsky's "Statement of the Questions Involved" includes six issues: (1) whether the Secretary misapplied the law of mitigation of damages; (2) whether unsubstantiated, inadmissible hearsay evidence can be relied upon to prove a fact at issue when it is repeatedly objected to during the hearing and in objections to the testimony of an expert witness who has no first-hand knowledge of any fact at issue; (3) whether the District's counsel's circumvention of the Philadelphia School Reform Commission (SRC) violates the Sunshine Act, 65 Pa.C.S. §§ 701-716, and is the very same malfeasance which this Court admonished the District for so doing; (4) whether the District's counsel's refusal to properly reinstate Vladimirsky through the SRC and refusal to properly assign Vladimirsky to a teaching position, and thereafter unilaterally declaring that he had abandoned his job without any knowledge, authority or action of the SRC is yet another due process violation; (5) whether the Secretary failed to act to reinstate Vladimirsky as directed to do so by this Court pursuant to the Court's Order and as asked to do so in Vladimirsky's application to enforce the executory orders of both this Court and the Secretary; and (6) whether this Court should order the

**Background**

The District hired Vladimirsky as a teacher and professional employee on September 1, 1997. Vladimirsky worked as a social studies teacher at Overbrook High School (Overbrook). As a result of incidents occurring on February 17 and March 9, 2011, Assistant Superintendent Linda Cliatt-Wayman instructed Vladimirsky to report to work at the High School Academic Division on March 14, 2011 pending an investigation of Vladimirsky's alleged aggressive and agitated classroom behavior. After an investigatory conference on March 23, 2011, Overbrook's then-principal Payne Young (Young) prepared an unsatisfactory incident report (SEH-204) recommending Vladimirsky's discharge. Young also recommended placing the SEH-204 in Vladimirsky's personnel file, and giving him an unsatisfactory rating for the September 2010 to June 30, 2011 period. Following an April 28, 2011 conference, Young issued a May 2, 2011 conference summary, wherein, she upheld the SEH-204 because Vladimirsky's behavior was excessive and unprofessional. After a June 8, 2011 second-level conference, the District's Talent Acquisition Office's Deputy Chief Lissa S. Johnson (Johnson) issued a conference summary recommending that Vladimirsky's employment be terminated and that incident documentation be placed in his personnel file.

Vladimirsky requested a hearing before the District's School Reform Commission (SRC) and on November 28, 2011, a hearing was held before the SRC. Effective July 20, 2011, the SRC terminated Vladimirsky's employment. Vladimirsky challenged his employment termination by pursuing litigation against the District before the Secretary and this Court. On August 3, 2016, this Court

---

new Board of Education to reinstate Vladimirsky and assign him to an actual teaching position and evaluate him in accordance with the present statutorily mandated evaluation process. Vladimirsky Br. at 4-5. These issues are subsumed in this Court's rephrasing of the issues and will be addressed accordingly.

concluded that the District failed to comply with the mandatory provisions of the Public School Code of 1949 (School Code),[2] and thus held that Vladimirsky's employment termination was a nullity. *See Vladimirsky v. Sch. Dist. of Phila.*, 144 A.3d 986 (Pa. Cmwlth. 2016) (*Vladimirsky I*). The Court ordered Vladimirsky be reinstated with backpay. *Id.*

> On August 25, 2016, the Secretary entered the following order:
>
> Pursuant to the Opinion and Order of the Commonwealth Court in the above captioned matter [] Vladimirsky shall be reinstated effective August 3, 2016. The parties are hereby ordered to file with my office a Stipulation regarding the amount of compensation that is due to [] Vladimirsky, no later than November 1, 2016, taking into account the duty to mitigate damages. If the parties cannot enter into a Stipulation regarding the amount of compensation that is due to [] Vladimirsky, the parties shall file a Legal Memorandum and Proposed Order with my office stating their respective positions on the issue of due compensation, no later than November 1, 2016. The Legal Memorandum shall include appropriate legal and factual support.

Reproduced Record (R.R.) at 1A.[3] On November 1, 2016, the District sent Vladimirsky's Counsel an email stating:

> This is to confirm the matters . . . just discussed with you on the phone. The [] District is willing to offer reinstatement to . . . Vladimirsky and is retaining its rights to move forward with discipline . . . , including, but not limited to, a recommendation of termination to the SRC. Please advise **by the end of business on November 2, 2016,** whether . . . Vladimirsky [is] willing to accept reinstatement with **a start date of November 4, 2016.**

---

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1-101 - 27-2702.

[3] The District requested the Secretary to vacate the August 25, 2016 order because the District petitioned the Pennsylvania Supreme Court for allowance of appeal and the petition's filing effected an automatic stay of this Court's Order. The Secretary did not address the request. Notwithstanding, on October 27, 2016, the District's counsel notified Vladimirsky's counsel, "[t]he District is not willing to reinstate . . . Vladimirsky in light of the supersedeas." R.R. at 689A. On January 23, 2017, the Pennsylvania Supreme Court denied the District's Petition for Allowance of Appeal. *See Sch. Dist. of Phila. v. Vladimirsky*, 165 A.3d 889 (Pa. 2017).

R.R. at 690A (emphasis in original).  On December 2, 2016, a follow-up letter was emailed to Vladimirsky's Counsel relating:

> On the telephone this afternoon, we discussed the order issued by the Commonwealth Court in this case.  You mentioned that, in fact, you read the [O]rder earlier today. The [O]rder states that your client[ is] 'hereby reinstated to [his] position[] as a professional employee . . . .'  You advised it is your position that in order for the [] District to comply with the [O]rder, the SRC must reinstate your client at a public meeting in order to comply with the Sunshine Act.[4]  You also advised that despite the language in the [O]rder it is your opinion that at present your client has not been reinstated to his position as a professional employee. Despite your position that the [O]rder violates the law by ordering reinstatement without compliance with the Sunshine Act, your client did not file a notice of appeal from the Court's [O]rder.  As you know, the time to appeal is now closed.
>
> In your client's petition[] for review to the Commonwealth Court, he requested, in pertinent part, 'an Order of the Court reinstating him to his position as a teacher . . . .'  In light of your client's request and the Court's [O]rder, your client received the relief he sought.  As the [O]rder states, your client has been reinstated on the date specified in the [O]rder.  The only outstanding issue is the matter of back pay, and as you know, that is currently being resolved by the Secretary.
>
> **We are again writing to your client to advise that he may report to work.**  As we have previously requested numerous times, please provide us with your client's email address so that the appropriate District staff persons may contact your client to discuss logistics.  **Please be advised that if we do not receive your client's email address by the close of business on <u>Wednesday, December 7, 2016</u>, the District will consider your client to have abandoned his position in the [] District.**
>
> The [] District expressly retains all and does not waive any of its rights, claims, defenses and the like.  In particular, the

_____

[4] 65 Pa.C.S. §§ 701-716.

> [] District expressly retains and does not waive its claims
> that your client has failed to mitigate his damages in whole
> or in part.

R.R. at 854a-855A (bold and underline emphasis in original).

In December 2016, the parties requested the Secretary to hold hearings on the damages issue. Those hearings commenced on March 22, 2017 and continued over the course of several days throughout 2017. On May 1, 2018, the Secretary ordered:

> Vladimirsky shall be entitled to **$21,561**[**.00**] as a total gross amount for lost compensation during 2011 and 2012. [] Vladimirsky also shall be entitled to payment for any leave that he would have earned during those two years if he remained employed with the [District]. The District shall have the right to make deductions for applicable retirement contributions and other payroll deductions in accordance with legal and/or contractual requirements.

Secretary's Dec. at 14. Vladimirsky appealed to this Court.[5]

### Discussion

### Compensation

**Mitigation**

Vladimirsky asserts that the Secretary erred when he held that Vladimirsky failed to mitigate damages after March 2012 because he took a position as a nursing home security officer, rather than continuing to search for teaching positions.

In *Vladimirsky I*, this Court explained:

---

[5] "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings, and whether an error of law or constitutional violation was committed." *Curl v. Solanco Sch. Dist.*, 936 A.2d 183, 185 n.1 (Pa. Cmwlth. 2007).

With respect to Vladimirsky's damages:

> the law is well established that '[a] school teacher is not a public officer, but is an employe[e] of the school district, and the ordinary rules relating to damages for breach of contract of employment apply.' *Coble v. Sch. Dist. of Metal Twp.*, . . . 116 A.2d 113, 115 ([Pa. Super.] 1955) (citation omitted). 'Where a teacher is wrongfully discharged, he is to be compensated for loss of salary during such period, but there is no requirement that the school district pay the compensation provided in the contract regardless of set-off or the amount of damages the employe[e] has suffered.' *Id.*

>> [W]e find no apparent reason why the ordinary rules relating to damages for breach of contract of employment should not be applied. As stated in 47 Am.Jur., Schools, § 145, p. 402: . . . [I]n an action for breach of contract by one employed as a teacher, the measure of damages is the wages which were to be paid, less any sum actually earned, or which might have been earned, by the plaintiff by the exercise of reasonable diligence in seeking other similar employment.

> *Id.* at 116. More recently, this Court held in *Merrell v. Chartiers Valley School District*, 51 A.3d 286 (Pa. Cmwlth. 2012):

>> A plaintiff has a duty to mitigate damages. *Circle Bolt & Nut Co. v. Pa. Human Relations Comm'n*, 954 A.2d 1265 (Pa. Cmwlth. 2008). The duty to mitigate damages, however, 'is not onerous and does not require success.' *Id.* at 1270. All that is required to mitigate damages is to make 'an honest, good-faith effort.' *Id.* at 1271. The employer has the burden of proving that substantially

6

> comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually identical opportunities for a promotion, compensation and responsibilities. Whether the plaintiff properly mitigated damages is a factual determination to be made by the fact-finder.
>
> *Merrell*, 51 A.3d at 298 (citations omitted).

*Vladimirsky I*, 144 A.3d at 1004 (quoting *Sch. Dist. of Phila. v. Jones*, 139 A.3d 358, 376 (Pa. Cmwlth. 2016)).

In *Merrell*, a trial court held that an applicant for a teaching position was improperly denied a statutorily mandated veteran's preference, and ordered that he be placed in a teaching position and made whole for lost wages and benefits. On appeal, the school district argued, *inter alia*, that the applicant failed to mitigate his damages

> because he applied for only one or two of the sixty-five substantially equivalent social studies teacher positions available in the neighboring school districts since 1997. The [s]chool [d]istrict further argue[d] that Merrell was not entitled to backpay because he withdrew from the employment market for teachers by working in the occupational safety industry and pursuing [Occupational Safety and Health Act of 1970[6]] recertification.

*Merrell*, 51 A.3d at 298. This Court rejected the school district's argument, explaining:

> Merrell remained in the workforce by continuing to work in the occupational safety industry and kept his teaching certificate in an active status after the [s]chool [d]istrict did not hire him in 1997. **The mere fact that he did not apply for a social studies teacher position more aggressively**

---
[6] 29 U.S.C. §§ 651-678.

**does not establish his failure to mitigate damages. He was not underemployed or underpaid.** Indeed, he earned more than he would have earned as a teacher each year except one. Due to his efforts, the backpay amount for more than the 13-year period was reduced to $25,789[.00]. The record amply demonstrates that Merrell exercised reasonable due diligence to mitigate damages and has not withdrawn from the work force.

*Merrell*, 51 A.3d at 298 (emphasis added).

Here, the Secretary held that there was **no record evidence** that after March 2012, Vladimirsky made any attempts to find similar employment. This finding is contradicted by the very same record testimony the Secretary cited in support of that finding, wherein Vladimirsky testified that he "stopped [searching for teaching positions] **toward the end of** [**2012**]." R.R. at 255A (emphasis added). Thus, the Secretary's finding is unsupported by the record evidence and directly contradicted by Vladimirsky's testimony that he attempted for well over one year to find teaching jobs.

Importantly, the Secretary found that from July 2011 through March 2012, Vladimirsky "made an honest, good-faith effort to find similar work[.]" Secretary's Dec. at 6. The finding was based on Vladimirsky's testimony that he sent his resume to numerous school districts, estimating the number of school districts to be between 24 and 36.[7] *See* R.R. at 256A. Vladimirsky explained that in some cases he sent more than one resume to a school district. He also stated that he received responses from only a small percentage of the school districts, and those responses were rejection letters. *See* R.R. at 252A. Vladimirsky further explained that he stopped searching for a teaching position because his search was rendered almost pointless as a direct result of the District's illegal employment termination. When

---

[7] The Secretary found that Vladimirsky testified credibly about his attempts to find employment as a teacher during the months following his employment termination. *See* Secretary's Dec. at 5.

asked on cross-examination why he gave up searching for a teaching position, he expounded:

> I was, according to them, fired, which polluted my ability to get another position.
>
> . . .
>
> [] Being fired from a position in the [] [D]istrict does not make you prospectively a very good employee. I did attempt. As you say, maybe I could have attempted even harder. I was rejected at every turn, which simply reinforced the perception that I am tainted; I am a teacher who was fired from a tenured position and these people do not want to hire me. I have to survive, I have to move on with my life.
>
> . . .
>
> [] I have parents that I'm responsible for who are old and sick, so there's, you know, more responsibilities than: oh, I'm a teacher and that's my commitment. No, I have family that I can't be sponging off of; I have to pay the bills.

R.R. at 260A.

To counter Vladimirsky's assertion that he exercised reasonable due diligence in pursuing alternative employment, the District relied on Vladimirsky's acknowledgement that he ceased looking for teaching positions towards the end of 2012 and thereafter, he worked in a lower paying position as a security guard. However, Vladimirsky's expert Richard M. Miller (Miller),[8] testified regarding his involvement in the District's teacher hiring process and Vladimirsky's belief that a continued search for teaching positions would be futile:

> Q. On those selection committees that you have sat on, were there any instances where teachers were not selected

---

[8] Miller testified that he had a lengthy tenure with the District as a teacher, a department head and an administrator. *See* R.R. at 549A-555A. His duties as department head included extensive involvement in teacher selection. He also admitted he was a long-time friend of Vladimirsky and his family. *See* R.R. at 555A-556A, 589A-591A.

because of the reasons that they [sic] were leaving their position at a previous school?

A. It didn't come up a whole lot, but I think that if you got into a fistfight with your principal, you were unlikely to think that you would get a job somewhere else, but you consider each case depending on what goes on. But the answer is when you have seven or 17 other teachers to choose from, why would you pick somebody with a shady past or with any blemish on their [sic] record?

In Lower Merion School where I'm somewhat familiar with, there's a thousand applicants, a thousand applicants for a social studies job. Why would anybody pick [Vladimirsky], who was dismissed from Philadelphia, when you can get a new teacher fresh out of college, pay them half as much money, and give -- why would you give the job to [Vladimirsky]? In my experience in the governance councils that I've sat on -- and I hired teachers for Success for All for the three years; it was more than just a governance council – I wouldn't consider anybody whose credentials were besmirched and might affect the -- you know, I was doing a program to report the efficacy of their program, and if they found out that some of the teachers had anything going on in the past, I would not consider hiring them, in my personal experience.

Q. If those selection teams on which you sat were aware that a teacher had been fired for cause, would they have been chosen for the job?

A. No.

. . . .

Q. What would be the chan[c]es of someone getting a teaching job if he had been fired for cause?

A. Zero.

. . . .

Q. Would the firing of a teacher for cause by a school district create a stigma on a prospective applicant for a teaching position?

A. Absolutely.

10

R.R. 583a-585A.

The District has the burden to prove that substantially comparable work was available and that Vladimirsky "failed to exercise reasonable due diligence in seeking alternative employment." *Vladimirsky I*, 144 A.3d at 1004 (quoting *Jones*, 139 A.3d at 376). To prove the availability of substantially comparable work, the District presented vocational expert Terry P. Leslie (Leslie) who testified that there were teaching positions available to Vladimirsky after his dismissal which were suitable to his education, experience, and qualifications.[9] *See* R.R. at 363A-443A.

Specifically, Leslie related that he "use[d] a couple of companies that provide[] job openings throughout the country in a variety of occupations." R.R. at 369A. He further explained, "I then had those job openings taken limited to teacher openings in the Commonwealth of Pennsylvania and specifically in subjects that would be taught by a social studies teacher." *Id*. Leslie clarified that "we were looking at from 2011 to current." R.R. at 371A. Leslie further stated:

> Well, I obtained all of the data, so I obtained a listing of all of the occupations that I was seeking. That list is over 60 pages long. [*See* Exhibit SDP-3.] I also received a copy of all of the advertisements for social studies teachers from 2011 to the present[, *see* Exhibit SDP-4], and when I say the present, I had asked for this data I believe in May of this year, and that listing was over 1,400 pages of individual advertisements for social studies teache[r]s.[10]

_____

[9] Vladimirsky asserts that Leslie was not a credible witness, in part, because he lacked knowledge in the education field. This Court has recently reiterated that "[i]n a case involving the dismissal of a professional employee of a school district, the Secretary is the ultimate factfinder **with the power to determine the credibility of witnesses**, the weight to be accorded the evidence, and the inferences to be drawn therefrom." *Moffitt v. Tunkhannock Area Sch. Dist.*, 192 A.3d 1214, 1218 (Pa. Cmwlth. 2018) (emphasis added).

[10] Notwithstanding Leslie's testimony, Exhibits SDP-3 and SDP-4 include job listings beginning in 2009. The availability of such positions before the District terminated Vladimirsky's employment on July 20, 2011 is not relevant to the mitigation issue and artificially inflates the number of allegedly available positions. This inclusion of 351 irrelevant and misleading job advertisements on 351 pages of Exhibit SDP-4 represents nearly one quarter of the entire exhibit.

R.R. at 372A.

Finally, Leslie discussed a list of job openings for social studies teachers that were filled from 2011 to present throughout Pennsylvania obtained through a Right-to-Know Law (RTKL)[11] request.[12]  *See* R.R. at 379A.  Based on a review of these documents, Leslie opined that for the period September 2011 through May 2017, "there were plentiful openings.  There was over - - it ranged between 100 and 250 openings per year within [subjects that a social studies teacher could teach]."  R.R. at 378A.  Accordingly, the District contended that substantially comparable work was available.

Based on Leslie's testimony and report, the Secretary concluded: "[Vladimirsky] did not exercise reasonable due diligence in obtaining available employment after March 2012 and also that [Vladimirsky] could have reasonably expected to earn more money than he actually earned if he pursued similar employment with reasonable diligence."  Secretary's Dec. at 7.

> 'The general rule is that the burden of proof rests with the defendant to show that the plaintiff could have minimized his damages **by using the ordinary care of a reasonable and prudent person**.'  *APCL & K, Inc. v. Richer [Commc'ns], Inc.*, . . . 361 A.2d 762, 766 ([Pa. Super.] 1976).  *See also*: *Williams v. [Nat'l] Org[.], Masters, Mates & Pilots of Am*[.], . . . 120 A.2d 896, 901 ([Pa.] 1956); *State Pub*[.] *Sch*[.] *Build*[g.] *Auth*[.] *v. W.M. Anderson Co.*, . . . 410 A.2d 1329, 1331 ([Pa. Cmwlth.] 1980).

*Princess Hotels Int'l v. Hamilton*, 473 A.2d 1064, 1067 (Pa. Super. 1984) (emphasis added).

---

Similarly, such irrelevant evidence of allegedly available positions occupies 15 of Exhibit SDP-3's 65 pages.

[11] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[12] Exhibit SDP-5, containing the District's Right-to-Know Request, contains information pertaining to positions beginning in 2009.

In *Vladimirsky I,* this Court specifically instructed the District: "The employer has the burden of proving that substantially comparable work was available and that the plaintiff failed to exercise reasonable due diligence in seeking alternative employment. The substantially comparable or equivalent work refers to employment which affords virtually **identical opportunities** for a promotion, **compensation** and **responsibilities**." *Vladimirsky I*, 144 A.3d at 1004 (emphasis added) (quoting *Jones I*, 139 A.3d at 376).

After a thorough review of the record, the number of positions Leslie claimed were available to Vladimirsky was misleading in that the position listings Leslie described pertained to jobs **across the Commonwealth and to jobs outside of the relevant time period**.[13] Vladimirsky was not required to relocate for employment in order to mitigate back pay damages. *See Somerset Area Sch. Dist. v. Starenchak*, 599 A.2d 252 (Pa. Cmwlth. 1991). Further, Leslie's testimony and documentary evidence does not prove that comparable employment was available. Having an expert obtain pages of information with respect to employment opportunities which included numerous opportunities that were clearly outside Vladimirsky's geographic location, outside of the relevant time period, and not substantially comparable work, is of dubious value. *See* Exs. SDP-3, 4, 5.

---

[13] For example, "available" positions listed in Exhibit SDP-3 (the list Leslie described as "over 60 pages long") include those located in counties distant from Philadelphia, including: York, Allegheny, Montour, Lancaster, Lehigh, Clearfield, Berks, Dauphin, Adams, Lackawanna, Warren, Blair, Washington, Centre, Northampton, Bradford, Clinton, Beaver, Crawford, Armstrong, Monroe, Erie, Northumberland, Columbia, McKean, Fayette, Luzerne, Carbon, Butler and Lycoming. An in-depth review of the document raises further questions as to its value. Many positions were listed as part-time and substitute positions. *See, e.g.*, Ex. SDP-3 at 1, 2. Some titles identified the positions cryptically, such as simply: "High" (*id.* at 2, 4); "Instructor" (*id.* at 1, 2); "Teacher" (*id.*); "Marketing Technician Support Teacher" (*id.* at 3). Curiously, 11 positions on the list were allegedly obtained from the product auction website, "eBay." Even more dubious is the inclusion of 10 allegedly "available" positions with the District – the same entity that terminated Vladimirsky's employment. Further, with respect to Exhibit SDP-4, many of the job advertisements pertained to jobs outside of the Philadelphia area, and part-time and substitute teacher positions.

Moreover, the fact that the District compiled hundreds of pages of random job ads does not prove that Vladimirsky failed to use "the ordinary care of a reasonable and prudent person" in seeking alternative employment. *Princess Hotels Int'l*, 473 A.2d at 1067 (quoting *APCL & K, Inc.*, 361 A.2d at 766).

The record evidence reflects and the Secretary found that "[a]fter his employment with the District ceased in July 2011, [Vladimirsky] was unemployed until 2013, when he was hired as a security guard for Sunrise Senior Living Center [(Sunrise)]. He remained employed at Sunrise at all relevant times thereafter." Secretary's Dec. at 2, ¶11. Once Vladimirsky was no longer eligible to receive unemployment compensation benefits, and he had been unsuccessful in obtaining a teaching position, he accepted the position at Sunrise as a security guard because he needed income to live.

The Secretary recognized Vladimirsky's resume submission to 24 to 36 school districts during the period between the District's employment termination and his acceptance of the Sunrise position, as an "honest, good-faith effort to find similar work[.]" Secretary's Dec. at 6. In contrast, the Secretary found that because Vladimirsky ceased looking for a teaching position after March 2012, he did not mitigate his damages after March 2012 and was not entitled to recover lost salary beyond the first quarter of 2012. The Third Circuit Court of Appeals has explained in the employment discrimination context:

> [T]he 'lower sights' corollary to the mitigation doctrine, . . . holds that, after unsuccessfully attempting for a reasonable period of time to secure substantially equivalent interim employment, a [wrongfully terminated employee] **is required to 'lower his sights' by seeking less remunerative work.** But the duty to lower one's sights arises only after a reasonably diligent search for employment similar to that lost has been made. **Doubts as to** whether or **when a** [**wrongfully terminated employee**]

14

> **must lower his or her sights are resolved against the employer.**

*Tubari Ltd., Inc. v. Nat'l Labor Relations Bd.*, 959 F.2d 451, 456 (3d Cir. 1992) (citations omitted; emphasis added).

The Secretary did not address how long Vladimirsky must continue what Vladimirsky believed to be a fruitless effort to find comparable employment that was tainted by the District's termination for cause. Vladimirsky's inquiries were consistently rebuffed or ignored. Vladimirsky received rejection letters or no response at all, and was not invited for a single interview, for almost a year and a half. Vladimirsky contends that he concluded that the stigma resulting from the District's improper termination of his employment rendered continued application submission unlikely to result in a teaching job.[14] Thus, upon the cessation of his unemployment compensation benefits, he accepted a job outside of the teaching profession to financially support his family. The District failed to show that Vladimirsky's decision to accept the security guard position and cease searching for a teaching job given the aforementioned circumstances was unreasonable, *see Raya & Haig Hair Salon v. Pa. Human Relations Comm'n*, 915 A.2d 728 (Pa. Cmwlth. 2007), and we resolve any doubts about whether it was appropriate for Vladimirsky to lower his sights and accept the Sunrise position, against the District.

"Bearing in mind the general rule that the burden of proof rests with the defendant to show that the plaintiff could have minimized his or her damages," *Starenchak*, 599 A.2d at 254, this Court cannot agree that the District met its burden of proving "that [Vladimirsky] failed to exercise reasonable due diligence in seeking alternative employment."[15] *Vladimirsky I*, 144 A.3d at 1004 (quoting *Jones*, 139

---

[14] Vladimirsky's conclusion is supported by Miller's testimony that Vladimirsky's likelihood of being hired was **significantly** reduced given the District's unlawful termination of his employment for cause.

[15] Vladimirsky also argues that Leslie's report was inadmissible hearsay. Because this Court concludes that the District did not meet its burden, the Court does not reach this issue.

A.3d at 376). Accordingly, because the record evidence reveals that the District did not satisfy its burden and Vladimirsky mitigated his damages, Vladimirsky is entitled to the compensation he would have earned had he not been dismissed, less any earnings he actually received during the relevant time period.

**Due Process**

**The Sunshine Act**

Vladimirsky argues that the District failed to comply with the Secretary's August 25, 2016 order directing that Vladimirsky be reinstated. Vladimirsky contends that because the District did not pursue Vladimirsky's reinstatement through the SRC, and the SRC did not reinstate him, the District violated the Sunshine Act. Specifically, Vladimirsky relies on Section 708 of the Sunshine Act which provides, in relevant part:

> An agency may hold an executive session for one or more of the following reasons:
>
> (1) To discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee, provided, however, that the individual employees or appointees whose rights could be adversely affected may request, in writing, that the matter or matters be discussed at an open meeting.

65 Pa.C.S. § 708(a)(1). Section 708(c) of the Sunshine Act mandates that "[o]fficial action on discussions held pursuant to subsection (a) shall be taken at an open meeting." 65 Pa.C.S. § 708(c).

The District rejoins that this Court ordered Vladimirsky to be reinstated, thus the Sunshine Act does not control. This Court's order expressly directed: "[T]he

16

Acting Secretary of Education's November 19, 2014 order is REVERSED. []
Vladimirsky is hereby reinstated to his position as a professional employee of the
[District] and the matter is REMANDED to the [Secretary] for further proceedings
consistent with this Opinion." *Vladimirsky I*, 144 A.3d at 1005.

> The Sunshine Act defines an official action as:
>
> (1) **Recommendations made by an agency** pursuant to statute, ordinance or executive order.
>
> (2) **The establishment of policy** by an agency.
>
> (3) **The decisions on agency business** made by an agency.
>
> (4) **The vote taken by any agency** on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa.C.S § 703 (emphasis added). Here, because this Court ordered Vladimirsky's
reinstatement, the SRC was not required to recommend, establish, decide or vote on
anything. Accordingly, since no official action was necessary, the Sunshine Act did
not apply.

**Reinstatement Letters**

Vladimirsky asserts that the District's letters offering him reinstatement
were illegal and thus void. Consequently, Vladimirsky maintains he was not
reinstated. This Court disagrees.

On August 3, 2016, this Court ordered Vladimirsky's reinstatement. In
accordance with this Court's Order, on August 25, 2016, the Secretary ordered
Vladimirsky reinstated effective August 3, 2016. This Court recognizes that the
District requested the Secretary to vacate his order based on its petitioning the
Pennsylvania Supreme Court for allowance of appeal. However, when the Secretary
did not address the request, the District in fact, sent a letter to Vladimirsky offering

17

reinstatement "with a start date of November 4, 2016." R.R. at 848A (emphasis omitted). Vladimirsky responded by stating his position that the SRC has to reinstate him at a public meeting and that Vladimirsky could not be reinstated with pending disciplinary action. The District responded on December 2, 2016, explaining that SRC action was not required, that the District had the right to proceed with disciplinary action and requested Vladimirsky to report to work.[16] *See* R.R. at 854A-855A.

This Court agrees with the District. As explained above, SRC action was not required because this Court ordered Vladimirsky to be reinstated.[17] Moreover, the District was free to proceed with disciplinary action as this Court specifically concluded: "**Vladimirsky is reinstated to his position as a professional employee until the District properly terminates his employment in accordance with the School Code** . . . ." *Vladimirsky I*, 144 A.3d at 1003-04 (emphasis in original). Accordingly, Vladimirsky's reinstatement was valid.[18]

### Additional Issues

### Application to Enforce

Vladimirsky argues that he submitted an application to enforce the Secretary's order reinstating him, and notwithstanding the Hearing Officer's

---

[16] The District also requested in the letter Vladimirsky's email address "so that the appropriate District staff persons may contact [Vladimirsky] to discuss logistics." R.R. at 855A. The District, therein, further advised Vladimirsky's counsel that "if we do not receive your client's email address by the close of business on Wednesday, December 7, 2016, the District will consider your client to have abandoned his position in the [District]." *Id.* (emphasis omitted).

[17] Therefore, the correct time frame for the calculation of damages ends on November 4, 2016, the day on which the District first offered Vladimirsky reinstatement.

[18] Vladimirsky further claims that his reinstatement without SRC action is analogous to his employment termination without SRC action, which this Court found to be a violation of Vladimirsky's due process rights. However, the cure for said violation is not reinstatement through the SRC, but rather reinstatement followed by disciplinary proceedings at the School Board's discretion, as prescribed by the School Code.

18

scheduling order (Scheduling Order) stating otherwise, the Secretary did not address it. The Scheduling Order stated, in relevant part:

> At the hearing, the following issues/matters shall be considered:
>
> a. The [District's] request for a stay or supersedeas pending review by the [Secretary].
>
> b. [Vladimirsky's] request for enforcement of [the Secretary's] orders reinstating [Vladimirsky] to his position with the [District].
>
> c. The amount of back pay, if any, that should be awarded to [Vladimirsky], taking into account his duty to mitigate damages.

R.R. at 139A. Vladimirsky claims the Secretary did not address issues a and b.

First, the Secretary's decision was dated May 1, 2018, and the Pennsylvania Supreme Court denied the District's Petition for Allowance of Appeal on January 23, 2017. Therefore, the issue of the District's request for a stay or supersedeas was clearly moot on the date the Secretary issued his opinion. Second, the Secretary concluded that the District reinstated Vladimirsky as of its first offer of reinstatement. Consequently, the issue of enforcement of the Secretary's reinstatement order was also moot at the time the Secretary issued his decision. Accordingly, the Secretary addressed the issues properly before him, *i.e.*, the amount of backpay and mitigation.

**Liberty Interests and Records Expunction**

Vladimirsky states in his brief: "The [Secretary] refused to order expunction of the records against Vladimirsky. We now ask the Court to do so." Vladimirsky Br. at 53.

Pennsylvania Rule of Appellate Procedure 1551(a) provides in pertinent part: "Review of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit . . . ." Pa.R.A.P. 1551(a). This Court remanded this matter in *Vladimirsky I* for Vladimirsky's reinstatement and calculation of damages. The Hearing Officer specified the issues to be determined in its Scheduling Order (the District's stay request, Vladimirsky's Enforcement Application and damages/mitigation). As Vladimirsky's record expunction was not before the Secretary, it was properly not heard or considered by the Secretary. Consequently, it cannot now be considered by this Court.

This Court notes that although it reversed Vladimirsky's employment termination because the District failed to comply with the School Code, it did not address the actual charges. Moreover, if Vladimirsky had accepted the reinstatement, the original charges could again be reinstituted and disciplinary proceedings could be brought against Vladimirsky correspondingly. Accordingly, the Secretary did not err in not addressing Vladimirsky's records expunction and we will not do so now.

**Lost Compensation Due to Vladimirsky**

Vladimirsky next argues that the Secretary failed to properly compensate him:

> The Secretary did not include what is due to [] Vladimirsky during the years that he was employed by [Sunrise] . Nor did he apply the statutory interest rate of 6% per year. [Section 1155 of the School Code,] 24 [P.S.] § 11-1155. Nor did he factor in the accumulated sick and personal days which Vladimirsky was entitled to be paid pursuant to the . . . [c]ollective bargaining agreement. Nor did he provide an order for the District to pay into the . . . retirement fund for the years in question.

Vladimirsky Br. at 54.

Section 1130 of the School Code provides that where a final decision on the discharge of a professional employee is in the employee's favor, "there shall be no abatement of salary or compensation." 24 P.S. § 11-1130. Thus, such employee is entitled to "damages for lost salary together with any increments to his salary to which he would have been entitled had he continued in his position[.]" *Mullen v. Bd. of Sch. Dirs.*, 259 A.2d 877, 881 (Pa. 1969). Further, such employee is entitled to 6% simple interest on back pay.[19] *See Shearar v. Sec'y of Educ.*, 424 A.2d 633 (Pa. Cmwlth. 1981).

Because damages are to be determined by the fact-finder, this Court remands the matter to the Secretary for recalculation of Vladimirsky's damages. *See Omicron Sys., Inc. v. Weiner*, 860 A.2d 554 (Pa. Super. 2004).

**Conclusion**

For all of the above reasons, the Secretary's order is vacated, and the matter is remanded to the Secretary to recalculate Vladimirsky's damages by including what amount he should have received under the salary schedule for the time period beginning with Vladimirsky's dismissal and ending on November 4, 2016, the

---

[19] Although Vladimirsky contends that the Secretary did not factor in accumulated sick and personal days or order the District to pay into the retirement fund, we do not agree. The Secretary's Order states that "Vladimirsky also shall be **entitled to payment for any leave that he would have earned** . . . ." May 1, 2018 Secretary's Order at 1 (emphasis added). The Secretary's Order also provides that "[t]he District shall have the right to make deductions for applicable retirement contributions and other payroll deductions . . . ." *Id.*

21

date he was first offered reinstatement, including all accumulated leave, less all income actually earned throughout that time period, plus 6% interest.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Serge Vladimirsky,           :
           Petitioner      :
                           :
         v.                :
                           :
School District of Philadelphia,   :    No. 732 C.D. 2018
         Respondent    :

# O R D E R

AND NOW, this 2nd day of April, 2019, the Secretary of Education's (Secretary) May 1, 2018 order is vacated, and the matter is remanded to the Secretary to recalculate Serge Vladimirsky's damages in accordance with this opinion.

Jurisdiction relinquished.

_____
ANNE E. COVEY, Judge